**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

Ca. No.1:12-cv-10743-DPW

| | |
|---|---|
| PETER H. KOUFOS <br><br> Plaintiff <br><br> vs. <br><br> U.S. BANK, N.A., AS TRUSTEE ON BEHALF OF THE CERTIFICATEHOLDERS OF THE CSFB MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-CF1, SELECT PORTFPOLIO SERVICING, LENDER PROCESSING SERVICES, LENDER PROCESSING SEWRVICES DEFAULT SOLUTIONS, NEW CENTURY MORTGAGE CORPORATION, ABLITT & SCOFIELD, P.C. <br><br> Defendants | **PLAINTIFFS' AMENDED VERIFIED COMPLAINT** |

PREFATORY ALLEGATIONS

1. The Plaintiff, Peter H. Koufos  (hereinafter "Plaintiff") is an individual with a usual place of residence at 19 Skyline Drive, Medway, Massachusetts, Norfolk County, in the Commonwealth of Massachusetts, 02053.

2. Defendant, U.S. Bank, N.A., as Trustee on Behalf of the holders of the CSFB Mortgage Pass-Through Certificates Series 2005-CF1, who has a registered agent located at One Federal Street, 3rd Fl. Boston, MA 02110.

3. The Defendant, Select [Portfolio Servicing, is a Mortgage Servicing Company, and successor in interest to Fairbanks Captial, with a business mailing address of PO Box 65250, Salt Lake City, UT 84165

4. The Defendant New Century Mortgage Company, ("New Century") was the originating lender which purportedly is the payee on the Plaintiff's promissory note, which is also purportedly secured by the mortgage given to New Century, who has a principal address of 18400 Von Karman, Avenue, Irvine CA 92612

5. The Defendant, Lender Processing Services, Inc. ("LPS"). LPS is a publicly traded corporation that provides mortgage services to

various parties in the mortgage industry. LPS has its principal place of business at 601 Riverside Avenue Jacksonville, Florida 32204. LPS does business by agent or employee in the Commonwealth and specifically in Norfolk County. This Defendant may be served by delivering service of process to Hugh Harris President and CEO, at the address of this Defendant listed above.

6. The Defendant LPS Default Solutions. This party is a wholly owned subsidiary of LPS. LPS Default Solutions  has its principal place of business at 601 Riverside Avenue Jacksonville, Florida 32204. LPS Default Solutions provides management of mortgage loans as a subservicer to various national mortgage servicers when a consumer' s loan reaches a predetermined state of default under the contracts between LPS Default Solutions and its clients (the mortgage servicers) as will be more fully set out herein. LPS Default Solutions may be served by serving process upon Hugh Harris, President and CEO, at the address of this Defendant listed above. LPS Default Solutions does business by agent or employee in the Commonwealth and specifically in Norfolk County. This party will be referred to in the balance of this pleading as "LPS Default".


FACTS AND TRAVEL

The Origination of The Koufos Loan, and The Documents on The Norfolk County Registry of Deeds

7. On January 28, 2005, the Plaintiff, entered into a loan refinancing arrangement with New Century Mortgage Corporation. ("New Century"). as the "originator", through the execution of a promissory note made payable specifically to New Century for $344,250.00.[1]

8. The Koufos Promissory Note contains a reference to  *Loan Number: 0002008464*

9. On January 26, 2005, New Century Mortgage Corporation sent the Plaintiff a "First Lien Letter", clearly indicating that the loan number associated with the Koufos loan was 0002008464.[2]

10.    On January 28, 2005, the Plaintiff, , also entered into and executed a separate contractual Security Instrument agreement ("mortgage") specifically with New Century Mortgage Corporation, whereby the Plaintiff specifically granted the contractual right to enforce the power of sale in the Koufos mortgage, specifically to only *New Century Mortgage Corporation.*

---

[1] Please see Exhibit A
[2] Please see Exhibit B

2

11.    <u>On February 02, 2005</u>, the Plaintiff's mortgage was thereafter recorded with the Norfolk Registry of Deeds at Book 22055, Page 495. [3]

12.    The Koufos Security Instrument also contains a reference to <u>Loan Number: 0002008464</u> on the bottom right hand corner of the document

13.    On <u>April 21, 2009</u>, New Century Mortgage Corporation purportedly through its Attorney in Fact, Select Portfolio Servicing, Inc., caused a purported "Assignment" of the Koufos mortgage, together with the Note or other evidence of indebtedness ("The Note") to be recorded on the Norfolk County Registry of Deeds at Book <u>26561</u>, Page <u>441</u>. [4]

14.    The above referenced purported "assignment" references the SPS "Servicing Number", ***not*** the Plaintiff's loan number of <u>0002008464.</u>

15.    The above described purported "Assignment" was purportedly executed on <u>April 14, 2009</u>, and clearly states at the top of the document face that the date of Assignment was April 09, 2009.

16.    The above described purported "Assignment" then purports to have an "effective date on or before 01/01/2008". [5]

17.    This purported "assignment" is purportedly executed by one Bill Koch "Document Control Officer", whose purported "execution" consists entirely of a solitary letter "*B* ".

18.    The Defendant Trust is a New York express business trust, that is required to strictly follow the mandates of its Governing Documents, and here specifically with regards to the mandated protocol under the terms of the trust with regards to the conveyance of its underlying corpus (and specifically the Koufos        note        and        mortgage),        to        the        Trust.

19.    Therefore in order for the Trust to have a legally cognizable legal "ownership" interest in the Koufos Note, and additionally a legally cognizable right to enforce the contractual power of sale in the Koufos mortgage under G.L. c. 244 § 14, as a "holder", that it purported received only by way

---

[3] Please see <u>Exhibit C</u>
[4] Please see <u>Exhibit D</u>
[5] "*If the Plaintiffs did not have their assignments to the Ibanez and LaRace mortgages at the time of the publication of the notices and the sales, they lacked authority to foreclose under G.L. c. 183 § 21 and G.L. c. 244 § 14, and their published claims to be the present holders of the mortgages were false. Nor may a post-foreclosure assignment be treated as a pre-foreclosure assignment simply by declaring an effective date that precedes the notice of sale and foreclosure, as did Option One's assignment of the LaRace mortgage to Wells Fargo. Because an assignment of mortgage is a transfer of legal title, it becomes effective on the transfer, It cannot become effective after land .*" U.S. Bank v. Ibanez 458 Mass. 637, 653-654 (2011).*

of a purported "assignment, it must follow its Governing Documents, which control.

20.     New Century Mortgage Corporation filed for protection under Chapter 11 of the United States Bankruptcy Code on April 02, 2007.

21.     In the course of the New Century Bankruptcy proceedings it was revealed, _and admitted by New Century Mortgage Corporation's counsel_, that New Century only had an "ownership interest" in approximately 2,000 loans at the time it filed for bankruptcy protection on April 02, 2007, and that these loans were internally designated as "_LNFA_" (Loans Not Financed Anywhere").

22.     In the course of the New Century Bankruptcy, it requested to operate as a Debtor In Possession ("DIP").

23.     As part of this request, a "stalking horse bid" was submitted by Greenwich Financial to sell the entirety of the remaining 2,000 loans that New Century had an ownership interest in.

24.     On June 29, 2007, In the Bidding procedures set up to divest these loans from the New Century Bankruptcy Estate, Ellington Capital Inc. purchased from the New Century Bankruptcy Estate, entirety of the remaining 2,000 loans that were owned by the New Century Bankruptcy Estate

25.     On June 29, 2007, In the Bidding procedures set up to divest these loans from the New Century Bankruptcy Estate, Carrington Mortgage. purchased from the New Century Bankruptcy Estate, entirety of the remaining mortgage servicing rights to loans it serviced for numerous securitized trusts.

26.     Thus, it can be conclusively established by the Plaintiff that New Century was completely divested of any ownership or mortgage servicing rights to any mortgage loan (including the Koufos loan) as of June 29, 2007.

27.     The "assignment on the Norfolk County Registry of Deeds, _clearly states_ that Select Portfolio, as _Attorney in Fact for New Century Mortgage Corporation_, made a direct assignment of the Koufos mortgage and note to the Defendant Trust on April 14, 2009.[6]

---

[6] Again, should the Defendant Trustee take the position that this purported "assignment" is merely "confirmatory" in nature, it would have to overcome the obvious observation that the document itself quite clearly articulates that the assignment purports to have **taken place at its execution** (April 14, 2009). Secondly, if this court still will hear the Defendant Trustee on this issue, the Massachusetts Supreme Judicial Court has clearly spoken  that an assignment of mortgage is a transfer of an interest in land that requires an executed writing from a named Grantee to a named Grantor, and where the "assignment" of mortgage is claimed to be "confirmatory", it must confirm an

28.    Based upon the above, on <u>April 14, 2009</u>, Select Portfolio could not act as "Attorney-In-Fact" for New Century in its purported "assignment" of the Koufos mortgage and note to the Defendant Trustee on behalf of the Certificateholders, as New Century had been completely divested of any and all mortgage asset (applicable to this action) as of June 29, 2007.

29.    The purported "Assignment" of the Koufos mortgage contains the purported Notarial Execution of one Shirley Tuitupou.[7]

30.    The above also clearly calls into question the candor of all of the party's attendant to such a purported execution and recordation of such purported "assignment".

31.    Leaving aside the legal impossibility of such assignment directly from New Century Mortgage Corporation through SPS as "Attorney In Fact", the Terms of the Governing Documents of the named Defendant Trustee, U.S. Bank, N.A., as Trustee on Behalf of the holders of the CSFB Mortgage Pass-Through Certificates Series 2005-CF1 trust, *mandate* that the conveyance of the Koufos Note and Mortgage to the trust by only one authorized party, the *Depositor* and that said sale take place on or before the "*Closing Date*".

32.    The *Controlling Terms of the Governing Documents of the named Defendant*, (CSFB Mortgage Pass-Through Certificates Series 2005-CF1 trust) clearly state that the "Depositor" (defined as Credit Suisse First Boston Securities Corp.) will *sell* the mortgage loans (Including the Koufos note and mortgage) to the Defendant Trustee, on the date of the Agreement (July 1, 2005), and prior to the "Closing Date" (August 08, 2005)", and with this transaction, the "Depositor" concurrent with the execution of the PSA, and delivery thereof, will transfer, assign, set over, and otherwise convey to the Trustee (defined as U.S. Bank National Association) in trust for the benefit of the Certificateholders, without recourse *all right title and interest of the Depositor in and to each mortgage loan*

33.    The Terms of the Governing Documents of CSFB Mortgage Pass-Through Certificates Series 2005-CF1 trust, clearly define the "Closing Date" as <u>August 08, 2005</u>.

34.    The Terms of the Governing Documents of the CSFB Mortgage Pass-Through Certificates Series 2005-CF1 trust, clearly define the "<u>Depositor</u>" as "Credit Suisse First Boston Securities Corp."

---

actual legally valid earlier assignment, which would require production of the purported earlier executed writing from the named Grantor (New Century) to the named Grantee (Defendant Trustee), which is being purportedly "confirmed".
[7] Please see <u>Exhibit D-1</u>, for comparison exemplars of Ms. Tuitupou executions on other documents.

35.    The Terms of the Governing Documents of the Credit Suisse
First Boston Securities Corp. trust, clearly define the "Trust "
as "CSFB Mortgage Pass-Through Certificates Series 2005-CF1"
trust,

36.    The Plaintiff *does not* make any claims under any third party
beneficiary theory to the Defendant Trustee's contract as part
of the Governing Documents of the Defendant Trust.

37.    The Plaintiff *does not* make any claims under any third party
beneficiary theory to the Defendant Trustee's contract as part
of the Governing Documents of the Defendant Trust, regarding the
assignment of his mortgage under the Pooling and Servicing
Agreement.

38.    As Massachusetts is a non-judicial foreclosure jurisdiction,
when seeking to enforce the power of sale under G.L. c. 244 §
14, the foreclosing entity (Defendant Trustee) is the moving
party, and the mortgagor as the non-moving party under this
statute (such as Plaintiff) is forced to file an underlying
complaint to challenge the standing of the foreclosing entity's
contractual right to foreclose upon the mortgagor's right of
redemption.

39.    Therefore, the only contract at issue before this court is
the Plaintiff's *mortgage contract*, and therefore the Plaintiff
has the absolute legal right to challenge the legal standing of
the Defendant Trustee as a purported assignee Real Party In
Interest, who currently purports to enforce the contractual
right of the power of sale in the Koufos mortgage, that
Plaintiff specifically granted only to New Century Mortgage
Corporation.

40.    Thus the Plaintiff's challenge to the Defendant Trust's
standing to enforce contractual rights in his mortgage contract,
as only a purported assignee, is premised upon the fact that the
Defendant Trustee's purported contractual rights to the Koufos
mortgage have been vitiated, due the failure of the trust to
follow its Governing Documents with regards to the sale of the
Koufos loan to the trust as part of its corps, which control.

41.    Further, the Plaintiff's challenge to the Defendant
Trustee's standing to enforce the contractual rights in his
mortgage contract, as only a purported assignee, have been
vitiated due the legal impossibility of the recorded(and only
purported) fatally deficient "assignment" on the Norfolk County
Registry of Deeds from a bankrupt entity that did not hold any
mortgage assets, or any other interests in any mortgage loan on
April 14, 2009, (the date of the purported assignment).

42.    If the Defendant Trustee seeks to assert that the purported
"assignment" is confirmatory, the only earlier date stated on

6

the face of the document recites April 09, 2009.

43.    If the Defendant Trustee seeks to assert that the purported "assignment" is confirmatory, the Massachusetts Supreme Judicial Court has spoken to the fact that a confirmatory assignment can only confirm an earlier legally valid assignment. And therefore such purported earlier assignment would have to be produced .

44.    Thus, the "assignment" that the Defendant relies upon as its sole evidentiary foundational support, represents a fatal defect in the chain of title to the Plaintiff's mortgage that forever prevents the Defendant Trustee from claiming any ownership of the contractual rights to enforce the Plaintiff's mortgage contract, and additionally is further evidence of the failure of the trust to follow its Governing Documents, which control.

45.    Therefore, the named Trustee Defendant who has published, and held itself out as the current "holder" of the Koufos' mortgage, in its publication of the notice of auction sale as required under G.L. c.244 § 14, is in fact not true or accurate, as the Defendant Trust is quite clearly an improper party to enforce the Plaintiff's mortgage contract, as contemplated under G.L. c. 244 § 14, and therefore any auction of the Koufos' residence held by the Defendant Trustee would result in a sale that is void *ab initio.*[8] .

46.    Therefore the Plaintiff's assertions in his pleadings regarding the legal impossibility of any "assignment' being generated from New Century, as described in a myriad of ways by the Defendant Trustee, as on April 14, 2009, April 09, 2009, "on or before January 01, 2008", or July 01, 2005 to the Defendant Trustee, are more than a formulaic recessitation of the elements, and thus the Plaintiff has made plausible claims for relief that must be accepted as true by this court as true at this stage of the litigation under the requirements set forth in *IANNACCHINO* v. *FORD MOTOR COMPANY & another.* 451 Mass. 623

G.L. c. 106 §3, and The Requirements To Enforce the Koufos Note

47.    Under information and belief, the original physical Koufos promissory note has never been produced in this matter, and *if* the Koufos promissory note is a "negotiable instrument", it would be Governed by Article 3 of the Uniform Commercial Code, and codified in this Commonwealth under G.L. c. 106 §3.[9]

---

[8] See *Bottomly v. Kabachnik* 13 Mass. App. Ct. 480
[9] Plaintiff's counsel wishes to state as an initial matter that due to the extremely complicated subject matter attendant to this area of the law, it is extremely difficult (if not impossible) to not be somewhat verbose, as the "securitization" of mortgages is about as unfathomably deep as a subject one could attempt to "explain", and therefore the Plaintiff's counsel apologies in advance for the extent of this complaint.

48.    G.L. c. 106 §3-309, provides the only exception for not
producing the original Koufos promissory note, and the Defendant
Trustee has not claimed this exception.
49.    The Plaintiff also affirmatively asserts that under  G.L.
c.106 §3-308, he is preemptively challenging the validity of the
signatures on any purported original note, and or Allonge,
produced by the Defendant Trustee, in order to preserve his
claims in this regard.

50.    The Plaintiff also affirmatively asserts that any Allonge
produced by the Defendant Trustee would need to meet the
requirements attendant to G.L. c. §3-204, as the indorsement of
a note set forth in an Allonge is not valid if the Allonge is
not firmly affixed to the note.

51.    In the alternative, the Plaintiffs' promissory note may also
indicate that this purported transaction was designed to take
place under the requirements of  U.C.C. Article 9, as the
Plaintiff's promissory note *does not appear to  meet the
definition of a negotiable instrument as it is written,*

52.    At ¶5 of the purported copy of the Koufos Note,  it *requires
an additional undertaking* by the Plaintiff attendant to the
payoff of the underlying debt, by specifically notifying the
"lender" *in writing* " prior to doing so, and additionally
incorporates other contracts within the note, to make the
determination of the amount owed not certain. [10]

53.    G.L. c. 106, § 3-104. States that the definition of a
negotiable instrument is as follows:

 (a)  Except as provided in subsections (c) and (d), "negotiable
instrument" means an unconditional promise or order to pay a
fixed amount of money, with or without interest or other charges
described in the promise or order, if it:

        (1) is payable to bearer or to order at the time it is
issued or first comes into possession of a  holder;

        (2) is payable on demand or at a definite time; and

        (3) does not state any other undertaking or instruction by
the person promising or ordering payment to do any act in
addition to the payment of money, but the promise or order may
contain (i) an undertaking or power to give, maintain, or protect
collateral to secure payment, (ii) an authorization or power to
the holder to confess judgment or realize on or dispose of
collateral, or (iii) a waiver of the benefit of any law intended
for the advantage or protection of an obligor.

---

[10] See Exhibit A

54.    In the Koufos bankruptcy proceedings, the Defendant Trustee in its original proof of claim on <u>March 22, 2011</u>, (through Ablitt & Scofield) only proffered a purported *copy* of a note that is made payable directly and solely to New Century Mortgage Corporation.[11]

55.    Plaintiff wishes to state that a copy of a negotiable instrument does not meet the requirement of "possession" under G.L. c. 106.

56.    A promissory note is a negotiable instrument that is specifically governed by Article 3 of the Uniform Commercial Code, which is codified in Massachusetts under G.L. c. 106. This statute does not allow for "copies" of negotiable instruments to be entered into evidence, save for the one exception stated in G.L. c. 106 §3-309. The Defendant(s) has never claimed this exception, and therefore under G.L. c. 106, it must produce the original promissory note executed by the Debtor.

57.    The Defendant(s) is also subject to the restriction stated under G.L. c. 106 §3-309(b), that the debtor must have adequate assurance that he is not subject to others potentially seeking to enforce the same instrument.

58.    In the alternative, Plaintiff wishes to affirmatively state in his pleading, and for the record, that under G.L. c. 106-308(a), he is pre-emptively challenging the validity of the signatures placed upon the <u>*copy*</u> of his purported note produced in the Defendant's proof of claim, based upon the lack of any evidentiary foundation that established the authority granted to these individuals, whether the signatures are in fact actually made by these individuals with authority to bind, as well as to when precisely these purported authorized  signatures took place.

59.    Specifically, under G.L. c. 106 §3-109, a negotiable instrument is payable either to order or to bearer:

Section 3-109. (a) A promise or order is payable to <u>bearer</u> if it:

(1) states that it is payable to bearer or to the order of bearer or otherwise indicates <u>that the person in possession</u> of the promise or order is entitled to payment;

(2) does not state a payee; or

---

[11] Please see Exhibit E

(3) states that it is payable to or to the order of
cash or otherwise indicates that it is not payable to
an identified person.

(b) A promise or order that is not payable to
bearer is payable to order if it is payable (i) to
the order of an identified person or (ii) to an
identified person or order. A promise or order that
is payable to order is payable to the identified
person.

(c) An instrument payable to bearer may become
payable to an identified person if it is specially
indorsed pursuant to subsection (a) of section 3-
205. An instrument payable to an identified person
may become payable to bearer if it is indorsed in
blank pursuant to subsection (b) of section 3-205.

60.    The term "Bearer" is defined in G.L. c. 106 §
1=201(5) as:

(5) "Bearer" means the person in possession of an
instrument, document of title, or certificated security
payable to bearer or indorsed in blank.

61.    The term "Order" is defined above in G.L. c. 106 §3-
109(a)(1).....is payable to bearer or to the order of bearer or
otherwise indicates that the person in possession of the promise
or order is entitled to payment;

62.    Here the proffer of the purported copy of the Plaintiff's
promissory note made in the Defendant Trustee's proof of claim,
is made specifically payable to New Century Mortgage
Corporation, not the Trust, nor in "blank".

63.    Therefore, the purported copy of the Plaintiff's promissory
note is "order paper", and as such there must be a proper
"negotiation" of an instrument payable from an identified person
(here "New Century"), which requires the holder's ("New
Century's") written counter-indorsement on the instrument
itself, or on a separate piece of paper that is firmly affixed
to the promissory Note (an Allonge).

64.    G.L. c. 106, provides only one exception to produce the
original physical instrument, which can be found in G.L. c. 106
§ 3-309 Enforcement of Lost, Destroyed, or Stolen Instrument:

Section 3-309. (a) A person not in possession of
an   instrument   is   entitled   to   enforce   the
instrument if (i) the person was in possession of
the   instrument   and   entitled   to   enforce   it   when
loss   of   possession   occurred,   (ii)   the   loss   of

possession was not the result of a transfer by the
person or a lawful seizure, and (iii) the person
cannot reasonably obtain possession of the
instrument because the instrument was destroyed,
its whereabouts cannot be determined, or it is in
the wrongful possession of an unknown person or a
person that cannot be found or is not amenable to
service of process.

(b) A person seeking enforcement of an instrument
under subsection (a) must prove the terms of the
instrument and the person's right to enforce the
instrument. If that proof is made, section 3-308
applies to the case as if the person seeking
enforcement had produced the instrument. The court
may not enter judgment in favor of the person
seeking enforcement unless it finds that the
person required to pay the instrument is
adequately protected against loss that might occur
by reason of a claim by another person to enforce
the instrument. Adequate protection may be
provided by any reasonable means.

65.    As the Defendant Trust was not the original payee on the
Plaintiff's promissory note, the Trust must demonstrate that
there was a proper "negotiation" of the Plaintiff's negotiable
instrument under the requirements of G.L. c. 106 § 3-201 from
New Century directly to the Trust, which also requires the
Defendant(s) to proffer the physical paper instrument, as it is
claiming holder status for order paper:

Section 3-201. (a) "Negotiation" means a transfer of
possession, whether voluntary or involuntary, of an
instrument by a person other than the issuer to a
person who thereby becomes its holder.

(b) Except for negotiation by a remitter, if an
instrument is payable to an identified person,
negotiation requires transfer of possession of the
instrument and its indorsement by the holder. If an
instrument is payable to bearer, it may be negotiated
by transfer of possession alone.

New Century Mortgage Corporation Bankruptcy

66.    It is incontrovertible by Defendants that New Century
Mortgage Corporation filed for Bankruptcy protection on April 2,
2007.

67.     It is also incontrovertible that 100% of New Century Mortgage Corporation's business, consisted entirely of "*wholesale origination*" of mortgage loans, which supplied mortgages to the secondary "securitized mortgage market, in which New Century's "ownership" interest" was divested approximately within three (3) months after the origination of the borrowers loan.[12]

68.     It is further indisputable by the Defendant Trustee that the only mortgage loans that New Century purportedly still had any "*ownership interest* " in, as of the date of the filing for bankruptcy in April of 2007, were 2,000 loans identified internally as "*Loans Not Financed Anywhere*" ("LNFA").

69.     It is further indisputable by the Defendant Trustee that, in the July 2, 2008 Opinion on Confirmation issued by the Honorable Judge Kevin J. Carey, he discusses the fact that all of the mortgage assets held by the debtor (New Century Mortgage Corporation, et. al.) at the time of bankruptcy were limited to the 2,000 LNFA loans, and that a "bidding procedures" protocol had been established, in order for the DIP to divest its interests in all mortgage assets held by the debtor.[13]

70.     It is further indisputable by the Defendant Trustee that the Debtor's (New Century, et. al.) April 2, 2007 Asset Purchase Agreement drafted between New Century and Greenwich Capital Financial Products, Inc., at page 4, defines the only mortgage loan assets held by New Century, as LNFA Mortgage Loans.[14]

71.     It is further indisputable by the Defendant Trustee that, in the New Century Mortgage Corporation Bankruptcy hearing on April 3, 2007, at page 57 of the hearing transcript, the Attorney representing New Century Mortgage Corporation clearly states, on the record, that the "mortgage assets" that New Century Mortgage Corporation had retained at the time of filing for Chapter 11 Bankruptcy with regards to mortgage loans were grouped into categories; Loans Not Financed Anywhere (LNFA) and "Residuals", which entailed cash received by New Century from the Securitized Trust Pools, as proceeds from the mortgage backed securities sales.[15] *The Plaintiff's loan does not fit either of these criteria.*

72.     It is further indisputable by the Defendant Trustee that at Article 8, of the Asset Purchase Agreement described above, at page 17, describes the fact that the LNFA loans were sold on a "servicing released" basis, meaning that the purchaser of the "ownership interests" in the LNFA loans, involved a separate transaction from the sale of New Century's servicing platform

---

[12] As opposed to New Century's subsidiary alter ego Home123, which also purported to hold on to portfolio loans.
[13] Please see Exhibit F at page 19 of the Opinion
[14] Please see Exhibit G
[15] See Exhibit H at page 57 of the Transcript

business asset.[16]

73.    It is further indisputable by the Defendant Trustee that on
<u>April 2, 2007</u>, New Century submitted an Emergency Motion of
Debtors and Debtors in Possession for Interim Orders Pursuant to
U.S.C. §§ 105, 362 and 364, and Federal Rules of Bankruptcy
Procedure 2002, 4001, and 9014(A) Approving Debtor In Possession
Financing.[17]

74.    It is further indisputable by the Defendant Trustee that at
Page 6, Line 16 of the above referenced Emergency Motion
submitted by New Century, states as follows:

"The need for stability is particularly critical since the
Debtors <u>largely operate a servicing business</u>"

75.    It is further indisputable by the Defendant Trustee that at
page 7, Line 18 of the above referenced Emergency Motion
submitted by New Century, states as follows:

"This Motion does not seek the approval of a large DIP
loan, certainly not in comparison to the billions of
dollars in financing the Debtors utilized [prepetition.
The DIP loan proposed herein is a scaled down facility
designed to allow the Debtors to <u>quickly</u> auction their
business and to maintain these operations in a stable
condition pending the completion of these sales".

76.    It is further indisputable by the Defendant Trustee that at
page 8, Line 20, of the above referenced Emergency Motion
submitted by New Century, states as follows:

"This is not a defensive DIP loan proposed by a
group of existing pre-petition lenders. Rather,
the proposed DIP loan is a stand-alone facility
provided by one lender, CIT, as an independent
business matter, and by one other member of the
DIP lending syndicate, Greenwich, as an
independent loan and in order to help finance the
Debtors as an ongoing concerns <u>so that Greenwich
can make a bid for certain of the Debtors'
assets</u>".

77.    It is further indisputable by the Defendant Trustee that at
page 9, Line 24, of the above referenced Emergency Motion
submitted by New Century, states as follows:

---

[16] Please see <u>Exhibit G</u> at page 17

[17] Please see <u>Exhibit J</u>

"Tranche A is a revolving loan facility with a borrowing base keyed to a variety of Debtors' unencumbered assets (i) a pool of mortgage loans with a face principal amount of approximately $173 Million, (ii) various residual interests in mortgage loan securitization trusts (i.e. mortgage backed securities), (iii) state and Federal Income Tax refunds that Debtors are seeking in an amount of $113 Million, (iv) a limited partnership interest in Carrington Investment Partners (US), LP ("Carrington"), and (iv) the Debtors' rights to *service* mortgage loans for a variety of securitization trusts and third party wholesale loans purchased on mortgage loans originated by Debtors and subsequently sold to these purchasers".

78.    It is further indisputable by the Defendant Trustee that at page 10, Line 25, of the above referenced Emergency Motion submitted by New Century, describes very clearly that the Tranche B piece, deals solely with DIP financing to solely maintain the New Century servicing business as a DIP.

79.    It is further indisputable by the Defendant Trustee that on February 2, 2008, New Century submitted an Amended Disclosure Statement for the Joint Liquidation of the Debtors and The Official Committee of Unsecured Creditors.[18]

80.    It is further indisputable by the Defendant Trustee that on page 29, of the above referenced Amended Disclosure Statement submitted by New Century, at Section III(C)(6) Asset Sales, discusses the events that transpired, with regards to *New Century's divestment of its "owned" assets* (as opposed to its servicing assets).

81.    It is indisputable by the Defendant Trustee that on page 29, of the above referenced Amended Disclosure Statement at Subsection (a), of Section III(C)(6), describes "The First Sale of LNFA and Residuals", and it is further indisputable that his section very clearly describes that there were approximately only 2,000 residential mortgage loans "owned" by the New Century Mortgage Corporation.

"These loans, either because of quality or timing, were not subsequently the subject of a repurchase transaction and are generally referred to as "LNFA" or "loans not financed anywhere". Other loans in this pool were originated by the Debtors but were never financed under a repurchase agreement or disposed of in a loan sale in the secondary market. The Mortgage Asset Bid Procedures Motion Proposed that Greenwich' Agreement to purchase the Mortgage Assets for $50 Million would

---

[18] Please see Exhibit K

serve        as        the        stalking        horse        bid".

82.     It is further indisputable by the Defendant Trustee that on page 30, of the above referenced Amended Disclosure Statement at Subsection (a), of Section III(C)(6), describes "The First Sale of LNFA and Residuals" clearly states the following:

> "On April 12, 2007, the Bankruptcy Court entered an Order approving the Mortgage Assets Bid Procedures, including a breakup fee of $945,000 to be paid to Greenwich in the event that Greenwich was not the successful bidder for the mortgage assets [Docket No. 226]. The auction for the Mortgage Assets was concluded on May 2, 2007. After nine rounds of bidding, the winning bidder for the Mortgage Assets was Ellington Capital Management Group, L.L.C. on behalf of its clients' funds ("Ellington"). NCFC, and NC Asset holding (together the "Mortgage Asset Sellers"), on one hand and Ellington, on the other hand, entered into an Asset Purchase Agreement ("the Ellington Agreement") dated as of May 2, 2007 and approved by the Bankruptcy Court by Order dated May 7, 2007 (the Mortgage Asset Sale Order"), pursuant to which Ellington agreed to purchase the Mortgage Assets for approximately $58.0 Million [Docket No. 566]"

83.     It is further indisputable by the Defendant Trustee that the Court stated at page 30:

> "On May 18, 2007, the sale of the Mortgage Assets to Ellington Closed. After giving effect to certain closing adjustments, the net purchase price paid by Ellington was approximately $57.9 Million, including approximately $2.6 Million deposited by Ellington into an escrow account to indemnify Ellington for claims made under the Ellington Agreement, and payment of the Greenwich break-up fee."

84.     It is further indisputable by the Defendant Trustee that page 29 of the above referenced Amended Disclosure Statement recites that on June 25, 2007, the Mortgage Asset Sellers and Ellington entered into a Supplement No. 1 to the original Ellington agreement ("Supplement 1), pursuant to which Ellington agreed to purchase certain additional mortgage loans originated by the Mortgage Asset Sellers ("the Additional Mortgage Loans") for approximately $4.4 Million.

85.     It is further indisputable by the Defendant Trustee that The Bankruptcy Court entered an order approving this Additional Mortgage Loan Sale to Ellington Capital on June 27, 2007 [New Century Docket No. 1715]. The closing of this sale occurred on June 29, 2007.

86.     It is further indisputable by the Defendant Trustee that on page 34, of the above referenced Amended Disclosure Statement, at subsection (f.) "Sale of Additional LNFA (Including Ohio Loans)", describes the sale of the remaining 46 Mortgage Loan Assets held by New Century, that were subject to "complications related to the State of Ohio, or because work was required to clear title to the loans." 41 of these remaining 46 loans were purchased by GRP Financial Services Corp. ("GRP"), and the purchase was approved by the Bankruptcy Court on January 9, 2008, [NC Docket Nos. 4361, 4556].

87.     Therefore, it is indisputable by the Defendant Trustee that based upon the entirety of the New Century Bankruptcy docket, that ALL of the Mortgage Assets held by the New Century DIP relevant to the Koufos matter, were sold and completely divested as of June 29, 2007.

88.     Therefore, it is indisputable by the Defendant Trustee that the Defendant(s) original legal position with regards to obtaining a legally valid "assignment" of the Debtor's note and mortgage on April 14, 2009 directly from New Century Mortgage Corporation as a "Debtor In Possession", is legally impossible, and under information and belief was willfully submitted by the enterprise in order to intentionally create the appearance that the Defendant trustee' had current legal standing as a real party in interest to be able enforce the Debtor's note and its security interest, under the strict requirements attendant to G.L. c. 244 § 14.

Mr. Koufos' Bankruptcy and The Admissions of The Defendant Trustee

89.     On December 16, 2010, the Plaintiff filed a voluntary petition for protection under Chapter 13 of the United States Bankruptcy Code.

90.     In the Defendant Trustee's proof of claim, it submitted a purported "copy" of the Koufos note payable specifically to New Century Mortgage Corporation.[19]

91.     On March 22, 2011, the Defendant Trustee brought a Motion to Lift the Automatic Stay, before the Bankruptcy Court.[20] Again, the Defendant Trustee proffered the same purported copy of the original Koufos promissory note, made payable specifically to only New Century Mortgage Corporation.

92.     On April 01, 2011, Mr. Koufos filed his Opposition to the above Motion, whereby he challenged the Defendant Trustee's right to enforce the Koufos note, as it was only specifically

---

[19] Please see Exhibit E
[20] Please see Exhibit L

16

payable to New Century Mortgage Corporation.[21]

93.    On May 19, 2011, a hearing was scheduled on the Defendant Trustee's Motion to Lift the Automatic Stay.

94.    On May 19, 2011, thirty (30) minutes prior to the hearing on the Defendant Trustee's Motion to Lift Stay, the Defendant Trustee electronically filed a completely untethered and unauthenticated purported copy of a purported "Allonge" to the Koufos Note that purported to counter-indorse the Koufos note directly to the Defendant Trustee.[22]

95.    Therefore the Plaintiff Trustee's belated proffer of only a completely untethered, unauthenticated, and only purported Allonge, is its admission that this purported "copy" of an "Allonge" was *not* firmly affixed to the Koufos note.

96.    G.L. c. §3-204, states that an indorsement of a note set forth in an Allonge is *not valid* if the Allonge is not firmly affixed to the note. *See In re Sima Schwartz*

97.    It is further indisputable by the Defendant Trustee that during the course of the May 19, 2011 hearing, the Defendant Trustee, in response to a direct question from the Bankruptcy Judge asking; *"what was the date of the allonge ?"*, the Defendant Trustee's counsel's responded, *"Based upon my recollection, I don't believe there is any date on that"*[23].

98.    It is further indisputable by the Defendant Trustee that during the course of the May 19, 2011 hearing the Defendant Trustee, in response to the Bankruptcy Judge's direct question as to the *precise date* that the Defendant Trustee obtained the "assignment" of the Koufos mortgage, the Defendant Trustee's counsel responded, *"The written assignment of mortgage that's attached to the motion is dated April 09, 2009"*.[24]

99.    It is indisputable by the Defendant Trustee that these statements above, by the Defendant Trustee's counsel, at the May 19, 2011 hearing, conclusively establish that the Defendant Trustee's position was  that it sought to rely upon New Century having acted as a Debtor In  Possession when the purported April 09,2009 took place.

100.   Therefore the Defendant Trustee sought to rely *solely* upon a purported "assignment" of the Koufos mortgage that it purportedly received on April 09, 2009, directly from New Century Mortgage Corporation, as its solitary evidentiary foundation and supporting indicium, that it received a legally

---

[21] Please see Exhibit M
[22] Please see Exhibit N
[23] Please see Exhibit O at page 3-5 of the Hearing Transcript
[24] Please see Exhibit O at page 5 of the Hearing Transcript

valid "assignment' of the Koufos mortgage, and therefore has the current legal standing to enforce the contractual rights that Plaintiff granted to only New Century Mortgage Corporation under the strict requirements attendant to G.L. c. 244 § 14.

101.    As discussed above, it is indisputable by the Defendant Trustee, that it was legally impossible for the Defendant Trustee to receive any ownership interest through any purported "assignment" of the Koufos mortgage of any mortgage asset from New Century Mortgage Corporation bankruptcy estate as a Debtor In Possession, through Select Portfolio Servicing, as its "Attorney-In-Fact", after June 29, 2007.

102.    At the conclusion of the May 19, 2011 hearing, the Bankruptcy Judge declared the Defendant's Motion to Lift Stay, was now a "contested matter", and further ruled that Mr. Koufos may now have discovery on issues raised in the hearing.

103.    On April 28, 2011, the Defendant Trustee filed an objection to the confirmation of the Koufos' Chapter 13 Plan, which on May 26, 2011, ruled that the Plaintiff shall file an amended plan within 30 days and that failing to do so the Plaintiff's case would be dismissed.

104.    On May 30, 2011, the Plaintiff filed an immediate Motion for Reconsideration of the above ruling, which was further objected to by the Defendant Trustee on June 06, 2011.

105.    A hearing on the above Plaintiff's Motion for Reconsideration was scheduled for June 23, 2011, and thus the 30 day Order from the court to file an amended Chapter 13 plan was now stayed during the pendency of this hearing.

106.    On May 31, 2011, the Plaintiff served his First Request for Answers to Written Interrogatories, First Request for Production of Documents, First Request for Admissions, and Deposition Deuces Tecum, to the Defendant Trustee's counsel.[25]

107.    During the pendency of this matter to be heard on Reconsideration, although, the court clearly scheduled a June 23,2011 hearing on the Plaintiff's Motion for Reconsideration, the Defendant Trustee took the position that the Plaintiff's discovery requests were now moot, as the case was "dismissed", and failed to answer each and every Plaintiff discovery request on such grounds.[26]

108.    On June 06, 2011, Mr. Koufos filed a Nine Count Adversary Proceeding complaint, under case number 11-01185, seeking *inter alia*:  Declaratory Judgments that the Defendant Trustee did not

---

[25] Please see Exhibit P
[26] Please see Exhibit Q. Additionally, in fact, the case was never actually dismissed

have standing to enforce the Koufos Note or mortgage, RICO, Violation of G.L. c. 93A, Civil Conspiracy, Unjust Enrichment, Violation of G.L. c. 140D, Declaratory Judgment That the Plaintiff Is Entitled to Rescind His Mortgage By Way of Recoupment, and Intentional and Negligent Infliction of Emotional Distress.

109.   On <u>June 16, 2011</u>, a continued hearing on the Defendant Trustee's Motion to Lift Stay was held.

110.   Although the Plaintiff had, on <u>May 31, 2011</u>, served a First Request for Answers to Written Interrogatories, First Request for Production of Documents, First Request for Admissions, and Deposition Deuces Tecum, to the Defendant Trustee's counsel, as allowed by the bankruptcy Judge, the Defendant Trustee failed to respond in any manner whatsoever to the Plaintiff's discovery requests.

111.   Instead of complying with the Plaintiff's reasonable discovery requests as ordered by the bankruptcy judge, the Plaintiff's counsel appeared at the second hearing and approached the Plaintiff's counsel moments prior to the hearing to request that he "view" the purported "original Koufos note".

112.   Plaintiff's counsel declined such invitation, and informed the Defendant Trustee's counsel that he does not have the expertise nor acumen, to make any legal determinations as to the validity (or not) of what the Defendant Trustee was proffering as a purported "original note".

113.   At the <u>June 16, 2011</u> hearing, the bankruptcy judge took exception to the Plaintiff's counsel's position and ordered the parties to view the purported original note in camera.[27]

114.   Although Plaintiff's counsel is not an expert in such matters, there was identified an issue under G.L. c. 106 §3-204 which would create a dispute as to the legal effectiveness of such proffer.

115.   Defendant Trustee's counsel had been served with Mr. Koufos Adversary Complaint 10 days previous to the June 16, 2011 hearing, which described in specificity and minute detail, as to the precise facts, statements, and admissions on the New Century bankruptcy docket, by New Century's counsel, that Plaintiff relied upon to conclusively establish that it was factually and legally impossible for New Century to have have acted as a "Debtor in Possession" through its "Attorney-In-Fact" in the purported assignment of the Koufos mortgage on April 14, 2009.

116.   Despite this fact, in the June 16, 2011 hearing, the Defendant Trustee's counsel asserted to the bankruptcy Judge

---

[27] Please see <u>Exhibit R</u>, the June 16, 2011 hearing transcript at page 4.

that "Mr. Koufos has not come forward with any evidence which would contradict whatever right New Century could act as a Debtor In Possession".[28]

117.    It is beyond peradventure that as only a purported "assignee"; the Defendant Trustee solely bases its clam to standing to currently legally possess the right to enforce the power of sale contractual right that Mr. Koufos only granted to New Century Mortgage Corporation, solely upon its proffered purported "assignment".[29] [30]

118.    The bankruptcy Judge asked a direct question to the Defendant Trustee's counsel, *"Could you go through the specific chain from beginning of the origination of the loan"* [31]

119.    The Defendant Trustee's counsel's response was *"January 26th, 2005, mortgage signed by debtor, Peter Koufos; …"Mortgage to New Century Mortgage Corporation"..."assignment of that mortgage ..written assignment of that mortgage dated <u>April 14, 2009</u> from New Century Mortgage Corporation...to…..US BANK, N.A as trustee....on behalf of the holders of the CSFB Mortgage Pass Through Certificates, Series 2005 CF1.....<u>We believe the chain of assignments is complete with regards to the mortgage</u>....."*[32]

120.    The Plaintiff's counsel pointed out to the Bankruptcy Judge, contrary to the Defendant Trustee's counsel's assertions, that Mr. Koufos had clearly and succinctly explained (and included as Exhibits) precisely what documents on the New Century bankruptcy docket supported his position that New Century could not have acted as a "Debtor In Possession" on the purported April 14, 2009, "assignment" of his mortgage contract.

121.    After taking time to review Mr. Koufos adversary complaint, (and Exhibits) at the <u>June 16, 2011</u> hearing, the bankruptcy Judge thereafter, ordered the parties, (by July 15, 2011) to submit Supplementary Briefing as to the impact of the New Century Bankruptcy on the effectiveness of the purported

---

[28] Please see <u>Exhibit R</u>, the June 16, 2011 hearing transcript at page 3, and page 16. Please also see Transcript <u>at page 16</u>, where counsel admits reviewing the Koufos complaint. Further, the Plaintiff is challenging the standing of a purported assignee to enforce contractual rights against Mr. Koufos that he gave to another. Therefore, it is not the Plaintiff's burden to establish the Defendant Trustee's standing, rather it's the other way 'round.
[29] In Massachusetts an assignment of mortgage is an assignment of an interest in land, which requires an executed writing from a legally valid named Grantor to a legally valid named Grantee.
[30] Massachusetts is also in the minority, where in this Commonwealth the mortgage **does not** automatically follow the note, and therefore the foreclosing entity must trace its title to the mortgage itself, from the originating "lender' to it.
[31] Please see <u>Exhibit R</u> at pp.6-9.

assignment of the Koufos mortgage to the Defendant Trustee.[33]

122.    Again this Motion to Lift Stay hearing was with regards to
the limited scope that takes place in these proceedings, which
only involves a very limited and cursory review of whether there
appears to be a minimal colorable claim as a creditor to the
bankruptcy estate of the debtor, See Generally, *Grella v. Salem
Five Cents Savings* 42 F.3d 26 (1st Cir. 1994).

123.    Additionally, as the bankruptcy court is an only an Article
I Court, it therefore lacks any subject matter jurisdiction to
make _any_ determination as to the validity (or not) of whether
the foreclosing entity is a proper party with legal standing
(as the moving party under the Massachusetts state non-judicial
foreclosure statute, (G.L. c. 244 § 14) to enforce the power of
sale contained within Mr. Koufos mortgage contract.[34]

124.    On July 07, 2011, one of the named Defendants in the Koufos
Adversary complaint (Ablitt & Scofield) hired the Gordon Law
Firm to file a Motion for Sanctions under Bankruptcy Rule 9011.[35]
125.    The said Motion was based entirely upon the elements set
forth in Bankruptcy Rule 9011.

126.    On August 17, 2011, the Plaintiff's counsel filed an
Opposition to the Motion for Sanctions brought by Ablitt &
Scofield.[36]

127.    The hearing on the Motion was held on September 08, 2011[37]

128.    On July 15, 2011, Mr. Koufos filed his Supplemental Briefing
on the Issue of New Century's standing, through his counsel.[38]

129.    Mr. Koufos Supplemental Briefing consisted of a very clear
and precise road map to help the bankruptcy court judge navigate
the specific pages of the New Century bankruptcy documents
proffered by Mr. Koufos as Exhibits to his Adversary Complaint,
that supported Mr. Koufos position that there were no loans for
New Century to assign through SPS as its "Attorney In Fact"
after June 29, 2007,and therefore the recorded assignment that
the Defendant Trustee purports to rely upon is in fact a legal

---

[33] Which forms the solitary evidentiary foundational proffer by the Defendant
Trustee's for its assertion that it has the current legal standing to enforce
the contractual right of the power of sale in the Koufos mortgage contract
that Mr. Koufos only granted to New Century Mortgage Corporation.
[34] While the bankruptcy court decision itself, (respectfully stated), is
superfluous to any examination that would take place under G.L. c. 244 § 14,
the statements and proffers made by the Defendant Trustee under oath in the
bankruptcy proceedings, are clearly relevant here before this court in the
context of such review under G.L. c. 244 § 14.
[35] Please see Exhibit S
[36] Please see Exhibit T
[37] Please see Exhibit T-1 for the transcript of the hearing.
[38] Please see Exhibit U

impossibility.

130.   On <u>July 15, 2011</u>, The Defendant Trustee responded with its Supplemental Briefing as Ordered by the Court (some 3 hours after Mr. Koufos' submission).[39]

131.   Contrary to the Defendant Trustee's counsel's previous assertions in response to the bankruptcy Judge's direct questioningin the June 16, 2011 hearing, as to the precise chain of title to the Koufos mortgage from origination to it, the Defendant Trustee now asserted that the Defendant Trustee actually *received the mortgage and note at issue in July 2005 well before New Century filed for bankruptcy "* [40]

132.   Further the Defendant Trustee's counsel now asserted for the first time that the recorded April 14, 2009 assignment of mortgage it now relies upon, actually *was merely confirmatory to evidence the 2005 conveyance".*

133.   As purported support for the above statement the Defendant Trustee's counsel stated *"A confirmatory assignment does not convey an interest in property, but rather is evidence of an earlier conveyance. It is well established that that a confirmatory assignment may establish standing to seek relief from an automatic stay",* See eg. *In re Almeida* 417 B.R. 140, 150 (Bankr.D.Mass. 2009).[41]

134.   What the Defendant Trustee's counsel conveniently omitted was the fact that a confirmatory assignment can only actually "confirm" an earlier legally valid assignment[42]

135.   The balance of the Defendant Trustee's Supplementary Brief goes on to make incorrect factual assertions, and legal conclusion bereft of any evidentiary foundational support.[43]

136.   At page 2 of its Supplemental Brief, the Defendant Trustee baldly states in a conclusory fashion, *"The PSA designates U.S. Bank National Association and Select Portfolio Servicing, Inc. as servicer, U.S. Bank as Trustee has held the loan since July*

---

[39] Please see <u>Exhibit V</u>
[40] See <u>Exhibit V</u>, at page 1.
[41] See <u>Exhibit V</u>, at page 1
[42] See <u>Exhibit W</u>, *U.S. Bank Nat'l Ass'n v. Ibanez* 458 Mass. 637, 653-654.
[43] For instance at page 2 of its Supplemental Brief (Exhibit V), the Defendant Trustee identifies the Koufos loan by *"SPS loan number 0008043754"* (this is only the <u>*servicing number assigned by Select Portfolio*</u> to its **servicing file** on the Koufos loan), which it footnotes at FN 1, by stating that the "SPS loan number is set forth in the Debtor's schedule D Voluntary Petition". In fact the Koufos **loan number** given at origination is actually **0002008464**, which can clearly be found be found at the bottom right of the face page of the un-redacted copy of the Koufos mortgage recorded on the Norfolk Registry of Deeds, <u>Please reference Exhibits; A, B, and C</u>.

*2005."*[44].

137.    The Defendant Trustee *never* made such assertions upon the direct questioning from the bankruptcy Judge at the June 16, 2011 hearing, as its *then* position in that hearing was that New Century was a "*Debtor In Possession* ", and that the assignment of mortgages were in its regular course of business, and therefore Select Portfolio Servicing was merely acting as New Century's Attorney In Fact on the April 09, 2009 "assignment".

138.    The Defendant Trustee further attempted to present a chronology of the Koufos loan history at page 3 of its Supplemental Briefing, that purports to try and explain away the obviously fatal defects attendant to the recorded (purported) "assignment" of the Koufos mortgage.[45]

139.    At page 5 the Defendant Trustee further attempts to try and explain away the obvious fatal defects attendant to the recorded (purported) "assignment" of the Koufos mortgage, by stating "*The loan was transferred to U.S. Bank as Trustee in July 2005 under the terms of the PSA, twenty-one months before New Century filed for bankruptcy in April 2007 ".*[46] This argument was also unsuccessfully attempted by the Plaintiff Trustees in *US Bank v.Ibanez* [47]

140.    Further, the Defendant Trustee in footnote 7 at the bottom of page 5, also attempts to state that Mr. Koufos is not a third party beneficiary of the PSA and lacks standing to object to any breaches of the terms of the PSA.[48]

141.    Contrary to the Defendant Trustee's statements, Mr. Koufos did not then, nor is he here now before this court, seeking to *enforce the PSA contracts themselves between the parties* to the Trust agreement, rather the Plaintiff states that the Trust is just that, *an express for profit business trust* that is required to follow its Governing Documents (which control) with regards

---

[44] Again, an assignment of mortgage is a transfer of an interest in land, which requires an executed writing from a named Grantor to a named Grantee, see *Ibanez* at p. 649, and p. 652, and 654 with regards to "confirmatory assignments".

[45] Indeed, it appears as though once the Plaintiff conclusively proved that it was legally impossible for New Century to have acted as a Debtor In Possession, the Defendant Trustee suddenly changed course and now presents a completely new argument that the Koufos mortgage was really sold to the Defendant Trustee on July 1, 2005 (Please reference Exhibit V at p. 1, 2).

[46] Again, the Defendant's has failed to make any proffer of an executed writing from the named Grantor to the named Grantee on July 01, 2005.

[47] See *Ibanez* at p. 649-652.

[48] The decision in *Ibanez* in favor of the Defendant homeowners dispels such untrue statements, and further the Plaintiff does not challenge the Defendant Trustee upon any theory of third party beneficiary contractual theory attendant to the PSA, **rather** the Plaintiff merely challenges the Defendant Trustee's standing to enforce his mortgage contract as only a purported assignee of New Century (the originating lender)

to the assignment of the corpus to it, in order for the Koufos mortgage to be part of the Defendant Trust's corpus.

142.    Further contrary to the Defendant Trustee's statements, the only contract at issue before _this_ court is the Koufos mortgage contract, _not the PSA "contracts"_,

143.    Therefore the precise issue before this court is whether, the Defendant Trustee, faced with the fatal deficiencies in its receipt of a purported fatally deficient "assignment" as only a mere and purported assignee of the originating "lender", is in _current possession_ of a _legally valid assignment_ of the contractual rights that Mr. Koufos granted specifically to only New Century Mortgage Corporation.

144.    On July 18, 2011, the Plaintiff filed a Motion to convert his case from one under Chapter 13, to one under Chapter 7.

145.    This Motion was Granted by the bankruptcy court, and thus converted the Plaintiff's Adversary complaint to a matter for the Trustee as the administrator of the Koufos bankruptcy estate.

146.    However, On August 08, 2011, the Honorable Judge Feeney, clearly stated that the issues presented in the Koufos' Opposition to the Motion to Lift Stay and within the Koufos' Adversary Proceeding clearly raised "complicated issues" and warranted continuing the Automatic Stay in place until September 08, 2011

147.    On October 21, 2011, the Honorable Judge Feeney, found (in her discretion) that she thought sanctions were warranted based upon the "improvident tone" of the Plaintiff's complaint, and what the Judge found to be irrelevant citation.[49]

148.    On October 21, 2011, the Honorable Judge Feeney also granted U.S. Bank N.A. as Trustee's Motion to Lift the Automatic Stay, and also dismissed the Adversary Proceeding for lack of subject matter jurisdiction, and therefore _never_ addressed the merits of the Koufos' Adversary complaint

CSFB Mortgage Pass-Through Certificates Series 2005-CF1 Trust

149.    CSFB Mortgage Pass-Through Certificates Series 2005-CF1 Trust is a common law trust formed under the laws of the State of New York.

150.    The CSFB Mortgage Pass-Through Certificates Series 2005-CF1 Trust is what is known as a "private placement", which means

---

[49] Please see Exhibit X

that the Certificates were purchased by a closed group of investors.

151.   As a result of the above, without discovery, the complete Governing Document(s) of the CSFB Mortgage Pass-Through Certificates Series 2005-CF1 Trust are not publically available to the Plaintiff from the Securities Exchange Commission, as it was not a "public offering".

152.   Plaintiff must therefore rely only upon the Defendant Trustee's proffer of the incomplete Pooling and Servicing Agreement of the CSFB Mortgage Pass-Through Certificates Series 2005-CF1 Trust, it made in its Supplementary Briefing in the Koufos bankruptcy Motion to Lift Stay proceedings[50]

153.   The said incomplete proffer of the PSA by the Defendant Trustee clearly omitted materially important portions of the PSA, namely its named and attached Exhibits.[51]

154.   In the terms of the of the CSFB Mortgage Pass-Through Certificates Series 2005-CF1 Trust Pooling and Servicing Agreement Governing Document Definition Section (Article I) <u>Credit Suisse First Boston Securities Corp.</u> is defined as the "<u>Depositor</u>".

155.   In the terms of the of the CSFB Mortgage Pass-Through Certificates Series 2005-CF1 Trust Pooling and Servicing Agreement Governing Document Definition Section (Article I) the "<u>Closing Date</u>" is defined as <u>August 08, 2005</u>

156.   In the terms of the of the CSFB Mortgage Pass-Through Certificates Series 2005-CF1 Trust Pooling and Servicing Agreement Governing Document Definition Section (Article I) the "<u>Mortgage File</u>" is defined as "*<u>Mortgage Documents listed in Section 2.01(b)</u> hereof pertaining to a particular Mortgage Loan and any additional documents delivered to the Trustee of the applicable Custodian to be added to the Mortgage File pursuant to this Agreement* ". <u>Therefore the documents in the "Mortgage File" are purportedly the true original documents, and not "copies"</u>

157.   In the terms of the of the CSFB Mortgage Pass-Through Certificates Series 2005-CF1 Trust Pooling and Servicing Agreement Governing Document, at Section 2.01(a), "<u>Conveyance of The Mortgage Loans</u>", states that "concurrent with the execution and delivery of the PSA (on the "Closing Date" [August 08, 2005], will sell, transfer, assign, set over, and otherwise convey to the Trustee in trust for the benefit of the

---

[50] Please see Plaintiff's <u>Exhibit V</u>, at its Exhibit A.

[51] Specifically materially relevant would be the omission of including <u>Exhibit G</u> (Form of Initial Certification of Trustee), and <u>Exhibit H</u> (Form of Final Certification of Trustee) as referenced in the Pooling and Servicing Agreement at the Table of Contents, and at <u>Section 2.02 "Acceptance by The Trustee of the Mortgage Loans"</u>

Certificateholders, without recourse, *all the right title and interest of the Depositor* in and to each mortgage loan".[52]

158.    In the terms of the of the CSFB Mortgage Pass-Through Certificates Series 2005-CF1 Trust Pooling and Servicing Agreement Governing Document, at *Section 2.01(b)* (as referenced in ¶134 above) states that "in connection with the transfer and assignment set forth in Section 2.01(a) above, the Depositor has delivered or caused to be delivered to the Custodidan for the benefit of the Certificateholders, the documents and instruments with respect to each Mortgage Loan as assigned, (i) the electronic Mortgage Loan Schedule, (ii) (A) the original Mortgage Note bearing all intervening 'endorsements' and including any riders to the Mortgage Note, 'edorsed' "Pay to the Order of ___ without recourse, and signed in the name of the last named endorsee by an authorized officer, or (B) with respect to any Lost Mortgage Note, a lost note affidavbit stating that the original Mortgage Note was lost or destroyed together with a copy of such Mortgage Note., (iii) the original of any guarantee executed in connection with the Mortgage Note (if any), (iv) the original Mortgage .., with evidence of recording thereon, or copies certified by the related recording office…(v) the originals of all assumption, modification, consolidation or extension agreements ..(vi).....*the original Assignment of Mortgage, in recordable form for the Mortgage Loan assigned in blank*[53]

159.    In *U.S. Bank Nat'l Ass'n v. Ibanez*, at 652, the Massachusetts Supreme Judicial Court discussed its position on the legal validity of mortgage assignments made in "blank" in this Commonwealth and held that an "assignment" of mortgage that does not name an assignee conveys nothing and is therefore void.[54]

---

[52] See Exhibit V

[53] In *U.S. Bank Nat'l Ass'n v. Ibanez*, (Exhibit W) the Massachusetts Supreme Judicial Court clearly stated that "assignments" of mortgage are transfers of interests in land that require an executed writing from a named Grantor to a named Grantee, "*Like a sale of land itself, the assignment of mortgage is a conveyance of an interest in land that requires a writing signed by the grantor, See G.L. c. 183 § 3; Saint Patrick's Religious, Educ. & Charitable Ass'n v. Hale, 227 Mass. 175, 177, 116 N.E. 407 (1917), In a title theory state like Massachusetts a mortgage is a transfer of legal title to property to secure a debt, See Faneuil Investors Group, Ltd. Partnership v. Selectmen of Dennis, 458 Mass. 1, 6, 933 N.E. 2d 918 (2010)*." U.S. Bank v. Ibanez, 458 Mass. 637, 649, "*Where as here, mortgage loans are pooled together in a trust and converted into mortgage backed securities, the underlying promissory notes serve as financial instruments generating a potential income stream for investors, but the mortgages securing these notes are still legal title to someones's home or farm and must be treated as such .*"U.S. Bank v. Ibanez, 458 Mass. 637, 649
[54] "*We now turn briefly to three other arguments raised by the plaintiffs on appeal. First, the plaintiffs initially contended that the assignments in blank executed by Option One, identifying the assignor but not the assignee,*

160.   In the rush to "securitize" mortgage loans, the financial industry failed to recognize the variance in individual state laws with regards to the fact that a mortgage is an interest in land in a title theory state like Massachusetts, and thus the requirement of an "assignemt" of mortgage in "blank" creates a fatal defect in the chain of title to the Koufos Security Instrument.

161.   However, here in the matter presently before this court, it appears as though there was never any actual legal conveyance of the Koufos Mortgage from a named Grantor to a named Grantee with regards to the Koufos Security Instrument, based upon the Defendant Trustee's proffer of its "assignment" [55]

162.   In the terms of the of the CSFB Mortgage Pass-Through Certificates Series 2005-CF1 Trust Pooling and Servicing Agreement Governing Document Definition Section (Article I)   the "Mortgage Loans" are defined as *"Such of the mortgage loans transferred and assigned to the Trustee pursuant to the provisions hereof as from time to time are held as part of the Trust, the mortgage loans so held being identified in the Mortgage Loan Schedule".*

163.   In the terms of the of the CSFB Mortgage Pass-Through Certificates Series 2005-CF1 Trust Pooling and Servicing Agreement Governing Document Definition Section (Article I)   the "Mortgage Loan Schedule" is defined as, *"The list of Mortgage Loans (as from time to time amended by the Seller to reflect the addition of Qualified Substitute Mortgage Loans and the repurchase of Mortgage Loan* pursuant to Section 2.02 or 2.03) *transferred to the Trustee as part of the Trust Fund and from time to time subject to this Agreement, attached at Schedule I, setting forth, among other things, the following information*

---

*not only "evidence[] and confirm[] the assignments that occurred by virtue of the securitization agreements," but "are effective assignments in their own right." But in their reply briefs they conceded that the assignments in blank did not constitute a lawful assignment of the mortgages. Their concession is appropriate.* **We have long held that a conveyance of real property, such as a mortgage, that does not name the assignee conveys nothing and is void; we do not regard an assignment of land in blank as giving legal title in land to the bearer of the assignment.** *See Flavin v. Morrissey,* 327 Mass. 217 *, 219 (1951); Macurda v. Fuller, 225 Mass. 341 , 344 (1916). See also G. L. c. 183, § 3. Ibanez at 652.*
[55] Indeed, the Defendant Trustee's initial position was that New Century Mortgage Corporation "assigned" the Koufos loan as a "Debtor In Possession" through its Attorney In Fact Select Portfolio Servicing, Inc.. After Mr. Koufos conclusively put such assertions to rest, the Defendant Trustee then suddenly set out on a new tact, and for the first time crafted a new and completely different argument in its Supplementary Briefing submitted under oath to the Bankruptcy court, baldly stating that the Koufos note and mortgage actually had been conveyed to the Trust on **July 1, 2005**, "long before the New Century Bankruptcy", without submitting any proper evidentiary foundation for such assertion.

*with respect to each Mortgage Loan...,,,(goes on to name thirty-four (34) separate required data fields)* [56].

164.    In the terms of the of the CSFB Mortgage Pass-Through Certificates Series 2005-CF1 Trust Pooling and Servicing Agreement Governing Document Definition Section (Article I), clearly distinguishes a "Servicing File" from a "Mortgage File". <u>A key distincion in the "Service File" is that these documents are only purported "Copies" of the original documents in the "Mortgage File".</u>

165.    In the terms of the of the CSFB Mortgage Pass-Through Certificates Series 2005-CF1 Trust Pooling and Servicing Agreement Governing Document Definition Section (Article I) a "<u>Servicing File</u>" is defined as "*The Servicing File for such Mortgage Loan consisting of the following documents to the exent possible; (i) Copy of the Mortgage File, (ii) Residential Loan Application, (iii)Mortgage Loan Closing Statement,(iv) Verification of employment and income if possible, (v) Verification of acceptable evidence of source and amount of downpayment, (vi) Credit Report on Mortgagor, (vii) Residential appraisal report, (viii) Photograph of Mortgaged Property, (IX) Survey of Mortgaged Property, (x) Copy of each instrument necessary to complete the identification of any exception set forth in the exception schedule in the title policy, ie, map or plat restrictions, easements, sewer agreements, home distributions, etc., (xi) All required disclosure statements, (xii) if required an appraisal termite report, structural enginerr's report, etc., (xiii) Sales contract, if applicable*

166.    The <u>terms of the  Pooling and Servicing Agreement Governing Document</u> of the CSFB Mortgage Pass-Through Certificates Series 2005-CF1 Trust clearly mandated that <u>Credit Suisse First Boston Securities Corp.</u> as the "<u>Depositor</u>" make an absolute sale of the Koufos note and mortgage to the Trustee (U.S. Bank, N.A. for the benefit of the Certificateholders, on *the Closing Date of August 08, 2005.*

167.    The <u>terms of the  Pooling and Servicing Agreement Governing Document</u> of the CSFB Mortgage Pass-Through Certificates Series 2005-CF1 Trust clearly mandated at Section 2.01(b) that <u>Credit Suisse First Boston Securities Corp.</u> as the "<u>Depositor</u>", delivered or caused to be delivered to the document Custodian of the Trust, ( for the benefit of the Certificateholders), <u>the documents and instruments with respect to each Mortgage Loan as assigned</u>, including the Koufos original note, and original mortgage, along with an "*<u>assignment of mortgage in blank</u> *" .

168.    The assignment of mortgage proffered by the Defendant Trustee clearly states on its face, that it was executed on

---

[56] Please reference Exhibit V

April 14, 2009, but the "Date of Assignment" was April 09, 2009, however the document also purports that it has an "effective date" of "on or before" January 01, 2008.

169.   None of these dates are availing on the Defendant Trustee to convey standing in the attempted non-judicial foreclosure on the Koufos home as the moving party under G.L. c. 244 § 14, as Plaintiff has conclusively established that New Century Mortgage Corporation could not legally act as a "Debtor In Possession" on any of these dates, and thus Select Portfolio Servicing could not Act as "Attorney In Fact" for New Century as a Debtor In Possession, to assign any "ownership" interest in the Koufos loan on these varying dates of the purported "assignment".

170.   The Defendant Trustee, in its recently crafted new position, now purports that the "assignment" of the Kofous mortgage was *actually made* back on July 01, 2005 by New Century Mortgage directly to CSFB Mortgage Pass-Through Certificates Series 2005-CF1 Trust.

171.   As the Defendant Trustee's new evidentiary "support", it attempts to now rely soley upon the wording in the Pooling and Servicing Agreement, which the Defendant Trustee theorizes as evidence that a sale of the Koufos loan occurred in 2005 to the Trust.

172.   The Defendamnt Trustee has not proffered what evidentiary foundation it relies upon to support that any sale of the Koufos note and mortgage to the Defendant Trustee occurred on July 01, 2005, outside of bald assertion.

173.   As discussed an assignment of mortgage in this Commonwealth is an assignment of an interest in land that requires an executed writing from a named Grantor to a named Grantee, the Defendant Trustee seems to have omitted such writing, instead relying upon an unauthenticated hearsay documents and unauthenticated statements.

174.   Indeed, in *Ibanez* the Massachusetts Supreme Judicial Court visited the intersection of "securitized mortgage lending", with what is historically required under Massachusetts conveyancing laws attendant to the "assignment" of mortgages in this Commonwealth.

175.   When confronted with the Plaintiff Trustees arguments in *Ibanez*, that the "securitization documents" themselves served as those executed writings, the court noted, "*We do not suggest that an assignment must be in recordable form at the time of the notice of sale or the subsequent foreclosure sale, although recording is likely the better practice. Where a pool of mortgages is assigned to a securitized trust, the executed agreement that assigns the pool of mortgages, with a schedule of the pooled mortgage loans that clearly and specifically*

*identifies the mortgage at issue as among those assigned, may suffice to establish the trustee as the mortgage holder. However, there must be proof that the assignment was made by a party that itself held the mortgage. See In re Samuels, 415 B.R. 8, 20 (Bankr. D. Mass. 2009). A foreclosing entity may provide a complete chain of assignments linking it to the record holder of the mortgage, or a single assignment from the record holder of the mortgage. See In re Parrish, 326 B.R. 708, 720 (Bankr. N.D. Ohio 2005) ("If the claimant acquired the note and mortgage from the original lender or from another party who acquired it from the original lender, the claimant can meet its burden through evidence that traces the loan from the original lender to the claimant"). The key in either case is that the foreclosing entity must hold the mortgage at the time of the notice and sale in order accurately to identify itself as the present holder in the notice and in order to have the authority to foreclose under the power of sale (or the foreclosing entity must be one of the parties authorized to foreclose under G. L. c. 183, § 21, and G. L. c. 244, § 14). Ibanez at 651.*

176.    Even if the above purported "assignment" recorded on the Norfolk County Registry of Deeds was not made by a bankrupt entity, this would be the Defendant(s) admission that this purported "assignment" was in direct contravention of the terms of the Defendant Trust's Governing Documents, as it took place by an entity other than the "Depositor" on April 14, 2009 {almost four (4) years *after* the Closing Date of August 08, 2005}.

177.    Indeed, the Plaintiff will seek discovery to examine whether in fact there actually is any earlier "assignment" that occurred in 2005, and further if such assignment exists, whether it is in compliance with Massachusetts law.

178.    Should the Defendant Trustee seek to rely upon the earlier "effective date" of April 09, 2009 placed upon the assignment of April 14, 2009, the Defendant Trustee would have to authenticate that in fact such actual executed writing took place from a named Grantor to a named Grantee on April 09, 2009, as a "confirmatory" assignment can only confirm an earlier legal assignment of mortgage.[57]

179.    Should the Defendant seek to rely upon its statements that it proffered *under oath* before the Bankruptcy Court in its Supplemental Briefing on the Issue of New Century that the Koufos loan was "subsequently transferred to U.S. Bank as

---

[57] As discussed it would be legally impossible for this purported "assignment" to have taken place on this date as New Century did not have any owned mortgage "assets" for Select Portfolio to act as "Attorney In Fact" under any purported assignment of the Koufos note and mortgage to the Defendant Trustee on April 09, 2009.

Trustee as of July 01, 2005", the Defendant Trustee would have to authenticate that in fact such an actual ealier executed writing took place from a named Grantor (New Century Mortgage Corporation) to a named Grantee (U.S. Bank, N.A. as Trustee on July 01, 2005, as a "confirmatory" assignment can only confirm an earlier legally valid assignment of mortgage.

180.   The terms of the  Pooling and Servicing Agreement Governing Document of Wells Fargo Alternative Loan 2007 PA3 Trust; clearly states at Section 2.02(a) Acceptance by the Trustee of the Mortgage Loans:

> The Trustee acknowledges receipt of the documents identified in the initial Certification in the form annexed hereto at Exhibit G (or in such form as such a smililar certification shall have been provided by the applicable Custodian) and declares that it holds and will hold or will cause its agent to hold such documents and the other delivered to it constituting the Mortgage Files[58].....and it holds or will hold or will cause its agents to hold such other assets as are included in the Trust Fund, in trust for the exclusive use and benefit of all present and future Certificateholders.[59]

181.   Further at Section 2.02 (a)

> Not later than 90 days after the Closing Date, the Trustee shall deliver to the Depositor, the Seller, and the Servicer, a Final Certification in the form annexed hereto as Exhibit H[60]

182.   Plaintiffs' claims above are _not_ rooted in any attempt by Plaintiffs to claim any third party beneficiary status of the Defendant(s) contracts amongst the parties to the PSA, but rather the Plaintiffs' challenge the standing of the CSFB Mortgage Pass-Through Certificates Series 2005-CF1 Trust  as a proper party having current contractual rights to enforce the power of sale provision in Plaintiffs' mortgage contract, which were originally (and specifically only given by Plaintiff to New Century Mortgage Corporation.

183.   Plaintiffs state that as the CSFB Mortgage Pass-Through Certificates Series 2005-CF1 Trust operates as a  for profit

---

[58] Please reference ¶134 above, and the Governing Document (PSA) Definition Section, and Section 2.01(b), for the definition of, and what constitutes the defined term "**Mortgage File**" under the PSA.
[59] Interestingly the Defendant Trustee conveniently omitted all of the Exhibits to the PSA, including its Exhibit G.
[60] Again, interestingly the Defendant Trustee conveniently omitted all of the Exhibits to the PSA, including its Exhibit H.

"Unincorporated Business Organization", that is allowed to operate in a manner that circumvents state statutory mandates attendant to the corporate form, as well as circumvent a portion of federal taxation under 860D of the United States Tax Code, it must _strictly follow its Governing Documents as an express trust_.[61]

184.   Defendant(s) purposely chose this form of Business Entity when creating the CSFB Mortgage Pass-Through Certificates Series 2005-CF1                                               Trust.

185.   Thus the Defendant CSFB Mortgage Pass-Through Certificates Series 2005-CF1 Trust, is required to strictly follow the terms of its Governing Documents with regard to the sale of the Koufos Note and Mortgage to the Trust as part of the Trust's underlying corpus.

186.   The Defendant(s) have purposely caused the recordation of documents on the Norfolk County Registry of Deeds indicating that the Koufos mortgage and note or notes referred to therein" were directly assigned by New Century Mortgage Corporation to the CSFB Mortgage Pass-Through Certificates Series 2005-CF1 Trust _on April 14, 2009._

187.   Leaving aside the fatal defect issues attendant to the New Century Mortgage Corporation bankruptcy, the Governing Documents of the actual trust, CSFB Mortgage Pass-Through Certificates Series 2005-CF1 Trust create a "steel door" represented by a "Closing Date" in which the Trust cannot accept any additions to the static pool of loans as a "prohibited transaction".

188.   Thus the purported "Assignment" of the Koufos note and mortgage is hopelessly, and fatally deficient to transfer any current rights of ownership of the Hayden note and mortgage to the Defendant Trust, and may call into question the motives and intent behind the documents, on the Norfolk County Registry of Deeds, as well as with regards to the institutional investors who purchased the "asset backed" certificates generated from CSFB Mortgage Pass-Through Certificates Series 2005-CF1 Trust

189.   Therefore any current claim by the CSFB Mortgage Pass-Through Certificates Series 2005-CF1 Trust concerning the current dominion, control, and/or ownership of rights to enforce the Koufos Note, or the right to enforce the power of sale in their mortgage contract has been permanently vitiated   .

_Defendant's Purported Present Claim to Title of The Plaintiff Mortgage Clearly Does Not Establish Legally Sufficient Title on Behalf of Defendant To Currently Enforce The Power of Sale In The Koufos' Mortgage Under G.L. c. 244 § 14_

---

[61] See _Hecht v. Malley_ 265 U.S. 144 (1923)

190.    Here, based upon the documents associated and filed by the Defendant Trustee in relation to the Plaintiffs' title on the Norfolk County Registry of Deeds , leaves Defendant's claim of ownership of the Plaintiffs mortgage in want, by not providing any legally sufficient evidentiary proffer, submitted under proper evidentiary rules, that any transfer of the Koufos' mortgage ever took place by way of "assignment" that is evidenced by an executed writing from a legally valid Grantor to a legally valid Grantee as required under historical Massachusetts case law precedent.

191.    Defendant has not provided any proffer that indicates that it has any current right or status as the current "holder" (as that term is historically been identified in this Commonwealth to include both the holder of the note and/or the owner of the right to exercise rights granted in its security instrument) to enforce the non-judicial power of sale in the Plaintiffs' mortgage under the strict requirements of G.L. c. 244 § 14.

192.    In fact the proffers made by the Defendant conclusively establish that it cannot now, nor ever be a proper party to enforce the power of sale against Plaintiffs under G.L. c. 244 § 14.

193.    G.L. c. 244 § 14, provides that only the "holder of the mortgage" at the time of the first publication of the foreclosure auction sale of the mortgagor's premises in a newspaper with sufficient local circulation, is cloaked with the legal standing and authority as the moving party in the non-judicial foreclosure process, to foreclose under the strict requirements of G.L. c. 244 § 14.

194.    On <u>April 14, 2009</u>, the Defendant Trustee purposely caused to be recorded in the Norfolk County Registry of Deeds, a purported "assignment" of the Koufos mortgage, "and note or notes referred to therein", purportedly executed on April 14, 2009 .

195.    At all times since the purported <u>April 14, 2009</u> "assignment" of the Plaintiffs' mortgage caused to be recorded on the Norfolk County Registry of Deeds at Book 16675, Page 295, the Defendant Trust has maintained the outward appearance to the world that it is the current owner of the Plaintiff's mortgage.

196.    This purported "assignment" is a legal impossibility.

197.    If the Defendant Trustee seeks to make the argument that this purported "assignment" is merely "*confirmatory*" in nature, the Massachusetts Supreme Judicial Court recently spoke the requirement that any assignment of mortgage that purports to "confirm" an earlier assignment, can only confirm an actual legally validly made assignment. "*A confirmatory assignment , however cannot confirm an assignment that was not validly made earlier or backdate an assignment being made for the first time,*

33

*U.S. Bank v. Ibanez* at p. 654. *(quoting Scalpen v. Blanchard, 187 Mass. 73, 76 (1904))*

198.   In *U.S. Bank v. Ibanez* 637 Mass. 438 (2011), the Massachusetts Supreme Judicial Court *was presented with a case that* involved Quiet Title actions brought by *U.S. Bank* and Wells Fargo, (as Trustees for the respective securitized trusts in those actions), under G.L. c. 240 § 6, seeking declarations of clear title as against two foreclosed upon homeowners The Plaintiff Trustee's in that action argued that that the defendant mortgagors' titles had been extinguished through legal, and *validly* conducted, foreclosure auction sales, and that as a result of these sales, the Plaintiff Trustees were now the current fee simple owners of the foreclosed properties on behalf of the Certificateholders of these trusts[62].

199.   As such the Plaintiff Trustees in Ibanez bore the burden of establishing their entitlement to the relief they sought. *Sherriff's Meadow Found, Inc. v. Bay Courte Edgartown, Inc*. 401 Mass 287, 269.

200.   However, as the Plaintiff Trustee foreclosing entities in *Ibanez* sought to prove their superior title based upon the foreclosure sales of the *Ibanez* and *LaRace* properties, the Plaintiff Trustee foreclosing entities *were required to show their compliance with the Massachusetts foreclosure statutes, in order to obtain the clear title they requested.*

201.   Thus, *Ibanez* is instructive as to the legal foundational requirements that must be satisfied by the moving party foreclosing entities (such as the Defendant Trustee here before this court) under G.L c. 244 § 14, in order to legally comply the strict procedures and protocol of the non-judicial foreclosure process in this Commonwealth.

202.   In this Commonwealth, an assignment of mortgage is a transfer of an interest in land that requires a executed writing from the Grantor to a named Grantee, "*Like a sale of land itself, the assignment of mortgage is a conveyance of an interest in land that requires a writing signed by the grantor, See G.L. c. 183 § 3; Saint Patrick's Religious, Educ. & Charitable Ass'n v. Hale, 227 Mass. 175, 177, 116 N.E. 407 (1917), In a title theory state like Massachusetts a mortgage is a transfer of legal title to property to secure a debt, See Faneuil Investors Group, Ltd. Partnership v. Selectmen of Dennis, 458 Mass. 1, 6, 933 N.E. 2d 918 (2010).* <u>*U.S. Bank v. Ibanez*</u>, 458 Mass. 637, 649 (2011).

---

[62] The Plaintiff's counsel represented the *LaRace* family in this matter before the Land Court, as well as before the Massachusetts Supreme Judicial Court.

203.   The previous paragraph has been held to apply where a
mortgage has been "securitized" for purported sale into a
securitized trust (as Defendant clams here before this court),
"...*Where as here, mortgage loans are pooled together in a trust
and converted into mortgage backed securities, the underlying
promissory notes serve as financial instruments generating a
potential income stream for investors, but the mortgages
securing these notes are still legal title to someone's home or
farm and must be treated as such*" U.S. Bank v. Ibanez, 458 Mass.
637, 649.

204.   As the Defendant Trust is not the original "mortgagee" or
"Lender", as only a mere purported "assignee" of the contractual
rights that Koufos granted only to New Century Mortgage
Corporation, the Defendant Trustee would need to establish its
chain of title to the mortgage from the originating lender to
it. "*If the claimant acquired the note and mortgage from the
original lender or from another party who acquired it from the
original lender, the claimant can meet its burden through
evidence that traces the loan from the original lender to the
claimant"). The key in either case is that the foreclosing
entity must hold the mortgage at the time of the notice and sale
in order accurately to identify itself as the present holder in
the notice and in order to have the authority to foreclose under
the power of sale (or the foreclosing entity must be one of the
parties authorized to foreclose under G. L. c. 183, § 21, and G.
L. c. 244, § 14).*". Ibanez at page 651.

205.   As the Koufos mortgage may travel independently of the note
in Massachusetts,  and as the assignment of mortgage is a
transfer of interest in land in this Commonwealth, in order for
the Defendant trustee to claim current legal title to the
mortgage recorded on the Norfolk County Registry of Deeds at
Book 18613, Page 289 from New Century Mortgage Corporation, "the
Defendant Trustee would have to provide executed writings from
the named Grantors to the named Grantees under the requirements
of the DefendantbTrust's Governing Documents [PSA] to provide
the Defendant Trustee with current  sufficient legal *title to
the Koufos land*, as "assignments of mortgage are transfers of an
interest in land that travel independently of the note. (See
Generally U.S. Bank v. Ibanez).[63]

206.   Defendant has failed to provide any evidentiary indicia that
any of the above described actions mandated under the terms of
the Trust's Governing Documents, and Massachusetts decisional

---

[63] "*Where as here, mortgage loans are pooled together in a trust and converted
into mortgage backed securities, the underlying promissory notes serve as
financial instruments generating a potential income stream for investors, but
the mortgages securing these notes are still legal title to someones's home or
farm and must be treated as such .*"U.S. Bank v. Ibanez, 458 Mass. 637, 649

case law, ever took place, and in fact has produced documentation which establishes that these required sales _never took place at all_.

207.   Thus, the Plaintiff does _not_ make any claims under a contract theory to enforce the PSA, rather Plaintiff states that _his mortgage contract is the only contract at issue before this court_, and only that as the Defendant Trust did not follow its Governing Documents with regards to the conveyance of its corpus, specifically the Koufos note and mortgage, to the Trust Fund, the Trust's interest in the enforcement rights to the Koufos note and mortgage has been vitiated.

208.   Therefore, the Plaintiff's challenge is based only upon his mortgage contract, and the legal impossibility of the purported "assignment' of the Koufos mortgage that the Defendant trustee relies upon as it solitary indicia that it has the current standing as an assignee of contractual rights that the Plaintiff only granted to New Century Mortgage Corporation.

209.   Then Plaintiff' position is that the Defendant has not yet produced the original Koufos promissory note, and and legally valid subsequent indorsement negotiations, thus it is currently unknown whether Defendant had current right and/or unified title to both the Koufos Note and mortgage at the time of the first publication of auction sale of the Plaintiff residence. See _Eaton v. Federal National Mortgage Association_ Suffolk Sup Ct. 11-1382 (2011), McIntyre, J. (Currently on Appeal at SJC-11041).

210.   Under historical case precedent in this Commonwealth, in order to enforce the harsh non-judicial power of sale in a mortgagor's mortgage contract, there must be unified title in both the borrower's note and mortgage at the time of the first publication of sale. However, this precise issue is currently squarely before the Massachusetts Supreme Judicial Court, in _Eaton v. Federal National Mortgage Association_ SJC-11041

211.   Defendant has never established under proper evidentiary rules, nor under the requirements attendant to the Uniform Commercial Code, which is codified in this Commonwealth under G.L. c. 106 §3, that it is currently cloaked with the current legal right and standing to enforce the Plaintiff's promissory note, or that it has unified title to both the Hayden's promissory note and its security instrument.

212.   There are many questions revolving around the Defendant Trustee's proffer (at the eleventh hour) of an electronic copy of a purported "Allonge" to the Koufos Note.[64]

---

[64] Indeed, one wonders the legal effectiveness of placing a statement upon the face of the said electronic copy of the purported Allonge which states,

213.   Thus, Defendant has not provided any indicia that it has followed the requirements of G.L. c. 244 § 14 strictly, as it has not identified the true "holder" of Plaintiff's mortgage, and thus any auction held by Defendant concluding in the sale of Plaintiff's residence would be void.

214.   Defendant has not provided any evidentiary foundation under proper evidentiary rules that it is entitled to enforce the Plaintiff's promissory note.

215.   Therefore, Defendant is not entitled to enforce the power of sale under G.L. c. 244 § 14.

216.   The Defendant Trustee has not produced any executed writing from any named Grantee to any named Grantor on any assignment of mortgage that 1) is from a legally and validly named Grantee, and 2) in the alternative, , the Defendant Trustee has not produced any executed writings from any named Grantor to any named Grantee that complies with the mandates of the properly named Trust's Governing Documents

217.   As a result of the above, the Plaintiff has absolute standing to challenge the legal standing of Defendant who seeks to enforce the power of sale originally given by Plaintiff solely to New Century Mortgage Corporation.

218.   Plaintiff does _not_ make any claims as any claimed third party beneficiary of the Defendant's contract.

219.   Plaintiff does _not_ challenge the assignment of his mortgage under the Defendant's "contractual arrangements" with others in the PSA.

220.   Defendant cannot conduct any current foreclosure auction sale of the Plaintiffs' residence, based upon a complete evidentiary dearth of authority to do so.

221.   Therefore, based upon the entirety of the foregoing, the Plaintiff respectfully requests that this court make a finding through a Declaratory Judgment, that the Defendant Trustee has not established its current legal standing as a purported mere assignee of the originating "Lender", sufficient to establish its current right to enforce the power of sale contained within the Koufos mortgage, under the strict requirements of G.L. c. 244 § 14.

<u>CLAIMS</u>

<u>COUNT I</u>
<u>Injunctive Relief</u>
(As to U.S. Bank, N.A., as Trustee on Behalf of the holders of the CSFB Mortgage Pass-Through Certificates Series 2005-CF1)

222.     Plaintiff repeats and realleges all paragraphs above as set forth fully above herein

223.     On information and belief, and predicated upon Defendants own documents recorded in the Norfolk County Registry of Deeds, the Defendant Trustee does not have the current legal authority to act pursuant to the power of sale in Plaintiffs' mortgage contract, because Defendant(s) could not legally receive a legally valid assignment of Plaintiffs' mortgage contractual rights from New Century Mortgage Corporation on the date(s) of the purported Assignment.

224.     On information and belief, and predicated upon Defendants own documents recorded in the Norfolk County Registry of Deeds, Defendant Trustee does not have the current legal authority to act pursuant to the power of sale in Plaintiffs' mortgage contract, because Defendant(s) could not legally receive a legally valid assignment of Plaintiffs' mortgage contractual rights derived from the originating entity and all intermediary parties, to it.

225.     The Defendant Trustee has not produced the original promissory note executed by the Plaintiff to be examined by an expert in such matters, nor has the Defendant provided an evidentiary foundation to support the intermediary absolute sales of such promissory note as required under the Defendant trust terms stated within its Governing Documents.

226.     On information and belief, the Legal Notice provided to Plaintiff pursuant to G.L. c. 244 § 14 is not valid because at the time it was sent, Defendant was not a proper assignee and holder of Plaintiffs' mortgage, and therefore Defendant had no power to act as mortgagee under the statute. See *Bottomly v. Kabchinick*, 13 Mass.App.Ct. 480, 434, 434 N.E.2d 667 (1982).

227.     Defendant(s) cannot conduct a valid foreclosure auction of Plaintiffs' residence under Massachusetts' law.

228.     Defendant's foreclosure, if allowed to proceed would cause Plaintiff irreparable harm. "real estate has long been thought unique, and thus, injuries to real estate interests frequently come within the realm of the chancellor." *K-Mart Corp. v. Oriental Plaza, Inc.* 875 F.2d 907, 914 (1st Cir.1989).

229.     The balance of the hardships tips decidedly in favor of Plaintiff, because absent injunctive relief, he will lose his residential property, and will lose the rights to raise claims and defenses to the purported enforcement of the mortgage set forth hereunder.

230.     The public interest is furthered by the granting of the requested preliminary injunction, as it acknowledges the importance of maintaining a home as the central component of the family and its safety, shelter and nourishment.

231.    Defendant(s) will suffer no irreparable harm from the
issuance of the requested preliminary injunction, as purely
economic harm is not deemed irreparable.

232.    Absent injunctive relief, there is a substantial likelihood
that neither Defendant, nor any other Defendant(s) would conform
its conduct in accordance with the mandates of Massachusetts law,
to be able to legally conduct the foreclosure auction of
Plaintiffs residential property under the strict requirements of
G.L. c. 244 § 14.

233.    Plaintiff respectfully seeks preliminary and permanent
injunctive relief from this court, to enjoin the currently
scheduled foreclosure auction of his residence, based upon the
entirety of the above numbered paragraphs.

Count II
Declaratory Judgment
That Defendant(s) Does Not Have Standing
As The Holder of The Plaintiff's Promissory Note
As A Real Party In Interest Under G.L. c. 106

(As to U.S. Bank, N.A., as Trustee on Behalf of the holders of
the CSFB Mortgage Pass-Through Certificates Series 2005-CF1)

234.    Plaintiff repeats the allegations set forth in paragraphs 1-
198, as if fully set out herein.

235.    The Trust seeks to enforce the Plaintiff's promissory note,
and as such is bound by the requirements of G.L. c. 106.

236.    In order for Defendant(s) to claim it is the current
"holder" (as that term is defined in G.L. c. 106 §1-201(20)) of
the Plaintiff's promissory note, it must comply with the above
mandates of the Uniform Commercial Code, codified in
Massachusetts under G.L. c. 106, in that it must produce the
physical instrument, and demonstrate that it received a proper
negotiation from New Century, at a point in time when New
Century was in bankruptcy.

237.    Additionally, as the Defendant trust, is a "securitized
business trust", the conveyance of the Plaintiff's note and
mortgage as part of the trust's corpus, must have taken place in
compliance with the Plaintiff trust's governing instruments, the
pooling and servicing agreement ("PSA"). See generally Hecht v.
Malley, 265 U.S. 144 (1923).

238.    Upon information and belief, it is impossible for
Defendant(s) to comply with the mandates set forth in G.L. c.
106, in order for it to claim any colorable right to standing as
a real party in interest to legally enforce the Plaintiff's note
as a holder, as the securitization process of the Plaintiff's
note has forever left the instrument unenforceable by the Trust

or any other named or unnamed Defendant.

239.    Upon information and belief, it is also impossible for
Defendant(s) to comply with the mandates set forth in the
Trust's own governing instruments, with regards to the
conveyance of the Plaintiff's note and/or mortgage to the Trust.

240.    As the Plaintiff has not had the opportunity for an expert
to review or properly examine the Plaintiff's physical note
purportedly held by Defendant(s), Plaintiff hereby seeks to
preserve his right to challenge the signatures on the
instrument, under G.L. c. 106 § 3-308(a).

241.    The Plaintiff respectfully requests that this court find
that the purported "Allonge" submitted by the Defendant is
defective by reason that, a) it purports to convey the mortgage,
b) it is only a *copy*, and c) it was not firmly affixed to the
debtor's original promissory note, and thus under G.L. c. 106
§3-204(a) is therefore invalid

242.    The Plaintiff therefore respectfully states that as a result
of the above, this court is now left with a proffer by Defendant
of a *copy* of the Plaintiff's promissory note made specifically
payable to New Century, not the Trust, or in blank, and
therefore the Plaintiff respectfully requests that this court
find that the Defendant(s) have not proffered sufficient
evidence that they are the holder of the Plaintiff's promissory
note under the requirements of G.L. c. 106.

243.    Therefore, the Plaintiff respectfully requests that this
court make a finding that in fact that neither the Trust, or any
other named or unnamed Defendant in this action, possesses any
colorable right to claim standing as a real party in interest to
legally enforce the Plaintiff's promissory note.

COUNT III
Declaratory Judgment
That Defendant(s) Does Not Have Standing
To Enforce The Plaintiff's Security Instrument
(Mortgage Contract) As A Real Party In Interest

(As to U.S. Bank, N.A., as Trustee on Behalf of the holders of
the CSFB Mortgage Pass-Through Certificates Series 2005-CF1)

244.    Plaintiff repeats the allegations set forth in paragraphs
above, as if fully set out herein.

245.    The Defendant Trust is not the original mortgagee; therefore
a proffer must be made indicating exactly how an "assignment" of
the Plaintiff's mortgage was made to the Defendant Trust
directly from New Century Mortgage Corporation on April 19,
2009.

40

246.    The Defendant Trust seeks to rely *only* upon the purported
"assignment" of the Plaintiff's mortgage it "received" directly
from New Century Mortgage Corporation, on April 14, 2009, a time
when New Century Mortgage Corporation was under the protection
of Chapter 11 of the United States Bankruptcy Code, and also at
a time when it had completely divested the New Century Mortgage
Corporation bankruptcy estate of the entirety of any owned
mortgage loan..

247.    The Defendant Trust's Governing Instrument authorizes only
one entity to convey the Plaintiff's note and mortgage to the
Trust (the Depositor, not New Century), as well as the fact that
this conveyance must be performed by a date certain (the Closing
Date), the failure to do so permanently vitiates the Trust's
claim to standing, as anything conveyed to the Trust after this
date certain is a "prohibited transaction". The Defendant Trust
seeks to rely only upon the purported "assignment" of the
Plaintiff's mortgage it "received" directly from New Century
Mortgage Corporation after the Closing Date.

248.    The Trust's Governing Instrument(s), the Pooling and
Servicing Agreement ("PSA"), are not merely contractual
agreements between the parties to this "securitization", rather
it is the terms of the Trust which must be followed with regards
to the conveyance of the Plaintiff's note and mortgage, in order
for the Trust to validly claim standing as a real party in
interest to enforce the Plaintiff's security instrument as a
purported "assignee."

249.    Under information and belief, the failure to convey the
Debtor's note and mortgage to the trust by the Closing Date
permanently vitiates the Trust's claim to standing, as anything
conveyed to the Trust after this date certain is a "prohibited
transaction".

250.    Additionally, Massachusetts is a title theory jurisdiction;
an assignment of mortgage is an assignment of an interest in
land, which is subject to defeasance by the satisfaction of the
underlying debt obligation.

251.    Due to the fact that Massachusetts is a "title-theory"
jurisdiction, when the Plaintiff executed a separate contractual
agreement with New Century Mortgage Corporation, granting the
contractual right under paragraph 22, of the power of sale for
"Breach of Condition" under his mortgage contract (to secure the
underlying promissory note), he did not place a "lien" upon his
title, rather Mr. Koufos actually conveyed title to 19 Skyline
Drive, Medway Massachusetts, to New Century Mortgage
Corporation, subject to defeasance only upon the satisfaction of
the underlying debt, or Mr. Koufos' enforcement of his statutory
right of redemption under G.L. c. 244 § 18.

252.   Therefore, as an assignment of mortgage in this Commonwealth is a transfer of an interest in land, the Massachusetts state statutes require an executed writing from all of the named Grantor(s) to all of the named Grantee(s) within the chain of title from the originating "lender" (New Century) to the Defendant Trustee.

253.   The Defendant Trustee's claim to the current possession of the contractual rights contained within the Koufos mortgage (specifically given to New Century Mortgage Corporation only) are based upon the solitary evidentiary indicium that the Defendant Trustee relies upon, the recorded "assignment of mortgage" on the Norfolk County Registry of Deeds, from a Grantor who was bankrupt, and could not act as a "Debtor In Possession" with regars to the "assignment" of any mortgage assets to the Defendant Trustee on April 09, 2009, or April 14, 2009, as all of the New Century Mortgage Corporation owned "mortgage assets" were sold and divested by the DIP on June 29, 2007.

254.   As to the Defendant Trustee belatedly new argument that the "assignment" to the Defendant Trust occurred in July 01, 2005, it purports to attempt to rely upon only the wording in its "PSA" for the solitary indicium of its authority for the proposition that the Koufos mortgage was really "assigned" on July 01, 2005.

255.   As the Defendant Trustee is the "moving party" under the non-judicial foreclosure statute (G.L. c. 244 § 14), the Plaintiff was forced to file a lawsuit to challenge the current legal standing under G.L. c. 244 § 14, that the Defendant Trustee purports.

256.   Therefore, as the Plaintiff has put into issue the Defendant Trustee's standing, it is the Defendant Trustee who has the burden to produce proof of an unbroken chain of title to the Plaintiff's mortgage contract as contemplated by the Governing Document of the Defendant Trust (see generally *U.S. Bank v. Ibanez*)

257.   Based upon the foregoing, the Plaintiff respectfully requests that this court make a finding that, in fact, the Defendant Trustee, or any named or unnamed Defendant, lacks any indicia of possessing any colorable right of standing to enforce the terms of the mortgage, as a purported assignee of contractual rights that the Plaintiff only granted to New Century Mortgage Corporation, as it has no colorable claim to any title to the Plaintiff's residential property located at 19 Skyline Drive, Medway, Massachusetts.

258.   Based upon the foregoing the Plaintiff has clearly put the title to the property located at 19 Skyline Drive, Medway, Massachusetts in issue

COUNT IV
Violation of Chapter 93A and
Its Implementing Regulations

(As to U.S. Bank, N.A., as Trustee on Behalf of the holders of the CSFB Mortgage Pass-Through Certificates Series 2005-CF1, and Select Portfolio Servicing, Inc.)

259.   Plaintiff repeats and realleges all paragraphs above as if set forth fully herein.

260.   Defendants have violated G.L. c. 93A and its implementing regulations by utilizing terms and practices that were unfair, deceptive, and/or unconscionable. These violations included, without limitation:

      a.   Making a loan on terms that were unfair and deceptive in light of its hidden advantages to Defendants due to its basing the issuance of the loan solely upon the liquidation value of the residence, create a hidden advantage to Defendants, to the detriment of Plaintiff,  in the origination of Plaintiff's loan in violation of 940 C.M.R. §§ 3.04, 3.05, 3.13, and 6.05, M.G.L. c. 183 § 63 and c. 93A § 2;

      b.   Failing to make disclosures that comply with 940 C.M.R. § 8.05(2).

261.   Defendants conduct was willful or knowing within the meaning of c. 93A, § 2.

262.   Plaintiff was injured and suffered damages by virtue of these violations.

263.   The demand letter requirement under c. 93A § 9 does not apply to the Defendant Trust, or the other Defendants because Plaintiff is asserting his claims defensively against the foreclosure action.

264.   The demand letter requirement under c. 93A § 9 also does not apply to the Defendant Trust, or the other Defendant(s), because the Defendant Trust, and/or Defendants do not maintain a place of business and/or do not keep assets within this Commonwealth.

265.   The demand letter requirement under c. 93A § 9 does not apply to Defendant Trust, or the other Defendant(s), because Plaintiff is making claims under G.L. c. 140D.

266.    Under G.L. c. 140D §34, a violation of G.L. c. 140D is an automatic violation of G,L, c. 93A.

## COUNT V
### Civil Conspiracy
### (As to all Defendants)

267.    Plaintiff realleges all prior paragraphs 1-245 above as if set out here in full

268.    Massachusetts recognizes two types of Civil Conspiracy.

269.    The first type is commonly known as 'true conspiracy', which occurs when the conspirators, acting in unison, exercise a peculiar power of coercion over the Plaintiff that they would not have had they acted alone" See Metro. Prop. And Cas. Ins. Co. v. Boston Regional Physical Therapy, Inc. F. Supp. 2d 199, 202 (D. Mass. 2008).

270.    The second form of conspiracy recognized in Massachusetts is the tort-based civil conspiracy is more akin to a theory of common law joint liability in tort ... Id.

271.    For liability to attach with respect to the second form of conspiracy there must be an agreement between two or more people to do a wrongful act and proof of some tortuous act in furtherance of the agreement. Id.

272.    This second type of civil conspiracy derives from concerted action, 'whereby liability is imposed on one individual for the tort of another." *Kurker v. Hill*, 689 N.E.2d 833, 836 (Mass App. Ct. 1998 (Citing *Aetna*, 43 F.3d at 1564).

273.    By acting in unison, Defendants exercised a peculiar power of coercion over Plaintiff, in that SPS and LPS, on behalf of the Defendant Trust, prepared and filed all relevant documents with reference to the attempted wrongful foreclosure of the Plaintiff's mortgage, something that the other Defendants could not have accomplished on their own.

274.    New Century Mortgage Corporation willfully induced Plaintiff to undertake the mortgage loan in question based solely upon the liquidation value of Plaintiff's residence, something the other Defendants could not have accomplished on their own.

275.    Defendant SPS purportedly billed and serviced, and accepted payments for Plaintiff's loan on behalf of entity(s) that has no legal right to any claim of ownership of Plaintiff's loan, something the other Defendants could not have accomplished on their own.

44

276.   Therefore Defendant(s) meet the requirements to establish the first type of conspiracy recognized in the Commonwealth.

277.   With regards to the second type of civil conspiracy recognized in Massachusetts, the actions of Defendant(s) also appear to imply they acted in concert to induce Plaintiff to enter into the mortgage loan transaction with scienter that it would default.

278.   All Defendants have acted in concert to seek wrongful collection on a mortgage loan that is not owned by any of the Defendants.

279.   There was an agreement between at least 2 parties (some undisclosed) to perform an act that is at least *malum prohibitum*, if not *malum in se*, and the tortuous act would be the wrongful collection, and conversion of, Plaintiff's monthly mortgage payments, and the current foreclosure action, based upon the fact that all parties acted with scienter that Defendants lack standing to claim any ownership of Plaintiff's note, or mortgage, and therefore lacked the legal right to foreclose.

280.   The affirmative steps in the furtherance of the conspiracy were

   a. New Century Mortgage Corporation's fraudulent inducement of Plaintiff to undertake the mortgage loan transaction

   b. SPS's wrongful collection of Plaintiff's monthly mortgage payments (in which this entity was paid handsomely in fees that were extracted from Plaintiff's monthly payments).

   c. SPS, and LPS' willful creation, and execution of legally deficient documents (such as the fatally defective purported "assignment" of the Plaintiff's mortgage, and fatally defective purported Allonge) in order to deceive the public and the judiciary, and to purposely mask the dire gaps in title to the Plaintiff's note and mortgage.

   d. the purported U.S. Bank as Trustee's purported wrongful receipt of Plaintiff's monthly payments on behalf of the Trust,

   e. SPS's prosecution of the wrongful foreclosure action as against Plaintiff through its wrongful filing of a complaint to foreclose in the Land Court.

   f. All of these actions were undertaken, when Defendants own evidence appears to establishes that it is factually and theoretically impossible for any of the Defendants to ever claim ownership to the Plaintiff's note or mortgage.

281.    Liability should be imposed on all Defendants for the torts perpetrated by each.

282.    Therefore, the requirements for the second type of civil conspiracy recognized in Massachusetts have been met as well

COUNT VI

Unjust Enrichment
(As to All Defendants)

283.    Plaintiff repeats and re alleges all prior paragraphs 1-262 above as if set forth fully herein.

284.    By their wrongful acts and omissions, including but not limited to making, servicing, and litigating the foreclosure thereof; the predatory and unfair mortgage loan described herein, All Defendants have been unjustly enriched at the expense of Plaintiff, and thus Plaintiff has been unjustly deprived.

285.    By reason of the foregoing, Plaintiff seeks restitution from Defendants, and an order of this Court disgorging all profits, benefits, and other compensation obtained by all Defendants from their wrongful conduct.


COUNT VII

Violation of G.L. c. 140D
(As to on Behalf of the holders of the CSFB Mortgage
Pass-Through Certificates Series 2005-CF1, and
Select Portfolio Servicing, Inc.)


286.    Plaintiff repeats and re alleges all prior paragraphs 1-265 above as if set forth fully herein

287.    Defendants did not adequately make required disclosures to Plaintiff as mandated under G.L. c. 140D § 12, and its implementing Regulation 209 CMR 32.00, et seq.

288.    Under G.L. c. 140D § 34, and violation of G.L. c. 140D, is an automatic violation of G.L. c. 93A.

289.    Plaintiff seeks redress from the Defendants violation of this statute and seeks all available remedies from this court that it deems just and proper.

<u>COUNT VIII</u>

Intentional and Negligent
Infliction of Emotional Distress
(As to U.S. Bank, N.A., as Trustee on Behalf of the holders of
the CSFB Mortgage Pass-Through Certificates Series 2005-CF1 and
Select Portfolio Servicing)

290.    Plaintiff repeats and re alleges all prior paragraphs 1-279
above as if set forth fully herein.

291.    The Defendant(s) intended to inflict emotional distress
or in the alternative the defendant, knew or should have  known
that emotional distress was likely to result from
        the collective enterprise's conduct; involving the continued
        threats to collect upon and enforce a legally unenforceable
        debt.

292.    Through the enterprise's drafting and executing legally
deficient documents to deceive this court of its standing in
this matter, the Defendant(s) conduct was extreme and
outrageous, was beyond all possible bounds of decency, and was
utterly intolerable in a civilized community;

293.    The defendant's conduct caused the Plaintiff great emotional
distress, and

294.    The Plaintiff's emotional distress suffered was severe and
of such a nature, that no reasonable person could be expected to
endure it.

295.    The Plaintiff respectfully requests that this court provide
redress to Plaintiff in an amount that it deems fair, just and
proper in these extremely outrageous circumstances.


        WHEREFORE, Plaintiff respectfully requests this court to
provide the requested legal and equitable relief and any other
such relief this court deems as just and proper, including but
not limited to:

a.  Declaratory Judgment that the neither the Defendant Trust, or
    any other named or unnamed Defendant in this action, possess
    any sufficient evidentiary indicia that provide standing as a
    real party in interest to enforce the Plaintiff's note under
    G.L. c. 106.

b.  Declaratory Judgment that the neither the Defendant Trust, or
    any other named or unnamed Defendant in this action, possess
    any sufficient evidentiary indicia that provides standing as a
    real party in interest to enforce the Plaintiff's mortgage

c. That the Defendant enterprise acted collectively and intentionally through predicate acts that proximately caused injury to the Plaintiff

d. All other legal and equitable claims made in the above paragraphs

e. All of Plaintiff's reasonable attorney fees, and attendant costs with defending the Defendant(s) legally deficient proof of claim in this matter, as well as its legally deficient Motion to Lift Stay hearing.

f. All other equitable and legal remedies that this court deem just and proper.

Respectfully submitted,
Plaintiff,
By His Attorney,

/s/Glenn F. Russell, Jr
Glenn F. Russell, Jr.
BBO# 656914
38 Rock Street, Suite #12
Fall River, MA 02720
(508) 324-4545
russ45esq@gmail.com

Dated:   May 02, 2012

<u>CERTIFICATE OF SERVICE</u>

I, Glenn F. Russell, Jr., do hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified in the Notice of Electronic Filing (NEF) and copies will be additionally served by electronic and regular mail upon the following this is the 2nd day of May, 2012:


<u>/s/Glenn F. Russell, Jr</u>
Glenn F. Russell, Jr.

Peter F. Carr, II
Eckert Seamans Cherin & Mellot, LLC
Two International Place, 16th Floor
Boston, MA 02110