UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| PETER H. KOUFOS, </br></br>    Plaintiff, </br></br>  v. </br></br>U.S. BANK, N.A, as Trustee on Behalf of the Holders of the CFSB Mortgage Pass-Through Certificates Series 2005-CF1, et al., </br></br>    Defendants. | Civil Action No. 12-10743-DJC |

## MEMORANDUM AND ORDER

**CASPER, J.**                              September 8, 2015

### I.  Introduction

The Estate of Peter H. Koufos ("Koufos"), through its Administrator James Koufos, has sued U.S. Bank National Association ("U.S. Bank"), as Trustee on behalf of the holders of the CSFB Mortgage Pass-Through Certificates Series 2005-CF1 (the "Trust"), Select Portfolio Servicing, Inc. ("SPS"), Lender Processing Services, LPS Default Solutions, New Century Mortgage Corporation ("New Century") and Ablitt & Scofield, P.C. (collectively, "Defendants"), asserting claims that relate to the Trust's foreclosure on Koufos's residence. U.S. Bank and SPS have moved for summary judgment on Koufos's claims and on their counterclaim for title and possession of the property. D. 58. For the reasons stated below, the Court **ALLOWS** the motion.

1

**II.     Standard of Review**

The Court grants summary judgment where there is no genuine dispute as to any material fact and the undisputed facts demonstrate that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A fact is material if it carries with it the potential to affect the outcome of the suit under the applicable law." Santiago–Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000) (quoting Sánchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996)). The movant bears the burden of demonstrating the absence of a genuine issue of material fact. Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000); see Celotex v. Catrett, 477 U.S. 317, 323 (1986). If the movant meets its burden, the non-moving party may not rest on the allegations or denials in her pleadings, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986), but "must, with respect to each issue on which she would bear the burden of proof at trial, demonstrate that a trier of fact could reasonably resolve that issue in her favor." Borges ex rel. S.M.B.W. v. Serrano–Isern, 605 F.3d 1, 5 (1st Cir. 2010). "As a general rule, that requires the production of evidence that is 'significant[ly] probative.'" Id. (quoting Anderson, 477 U.S. at 249) (alteration in original). The Court "view[s] the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor." Noonan v. Staples, Inc., 556 F.3d 20, 25 (1st Cir. 2009).

**III.    Factual Background**

The facts below are drawn from Defendants' statement of material facts, D. 60 (and exhibits referenced therein), Koufos's response thereto, D. 64 (and exhibits referenced therein), and the exhibits appended to Koufos's amended complaint, D. 10. On January 26, 2005, Koufos refinanced his home and executed a promissory note in the amount of $344,250 (the "Note") to New Century. D. 60 ¶ 1. Koufos granted New Century a mortgage (the "Mortgage") on his

property located at 19 Skyline Drive, Medway, Massachusetts (the "Property") to secure the obligations under the Note.  Id. ¶ 2.

On July 1, 2005, Credit Suisse First Boston Mortgage Securities Corporation ("Credit Suisse"), DLJ Mortgage Capital, Inc. ("DLJ Mortgage"), SPS and U.S. Bank entered into a Pooling and Servicing Agreement (the "PSA").  D. 60 ¶ 3, D. 62-5–62-10.  The Mortgage Loan Schedule to the PSA identifies the Mortgage as included in the corpus of the Trust.  D. 62-11 at 3.  On July 13, 2005, the servicing rights of the Mortgage were transferred from New Century to SPS with notice to Koufos.  D. 60 ¶ 7.

On April 2, 2007, New Century filed for Chapter 11 bankruptcy.  D. 60 ¶ 8.  At the time, New Century held approximately two thousand residential mortgage loans.  D. 10-12 at 33.  On May 18, 2007, New Century agreed to sell a portion of its mortgage assets for $57.9 million to Ellington Capital Management Group, L.L.C. ("Ellington").  Id. at 34.  On June 29, 2007, Ellington purchased New Century's remaining residential loans with the exception of forty-six loans that were either subject to "complications related to the State of Ohio" or required the clearing of title.  Id. at 34-38.

Koufos defaulted on the Mortgage and failed to cure his default following notice.  D. 60 ¶ 11.  On January 4, 2008, Koufos entered into a Forbearance Agreement with SPS to permit Koufos to reinstate the Mortgage and halt foreclosure in return for agreed-upon payments.  Id. ¶ 12; D. 62-15.  Koufos subsequently defaulted under the Forbearance Agreement.  D. 60 ¶ 13.

On April 9, 2009, in accordance with a power of attorney it held on behalf of New Century, D. 62-13, SPS assigned the Mortgage to U.S. Bank as Trustee for the Trust and recorded the assignment (the "Assignment") on April 21, 2009.  D. 62-12.

The Trust then proceeded with foreclosure against Koufos.  D. 60 ¶ 14.  On May 14, 2009, the Trust sent Koufos written notice of a foreclosure sale scheduled for June 23, 2009.  D. 62-16.  Foreclosure proceedings were automatically stayed when Koufos filed for bankruptcy. D. 60 ¶ 15.  When the bankruptcy court lifted the stay, the Trust rescheduled the foreclosure sale for August 1, 2012.  D. 60 ¶ 19.  The Trust was the highest bidder at the public foreclosure auction and purchased the Property.  D. 60 ¶ 21, D. 62-19.  Following the foreclosure and sale, Koufos continued to occupy the Property.  D. 60 ¶ 23.

## IV.   Procedural History

Koufos filed this action on April 24, 2012 in the Norfolk Superior Court challenging the Trust's right to foreclose on the Property.  D. 9 at 1.  U.S. Bank and SPS removed the matter to federal court on April 26, 2012.[1]  D. 1.  On that same day, Koufos moved for injunctive relief to block the foreclosure sale.  D. 4.  Koufos filed an amended complaint on May 2, 2012.  D. 10. U.S. Bank and SPS subsequently filed a motion to dismiss or to strike Koufos's amended complaint. D. 14.  The Court denied Koufos's motion for injunctive relief, D. 23, and denied in part and allowed in part the motion to dismiss, D. 26.  The Court dismissed all claims except Koufos's claims for a declaratory judgment that U.S. Bank lacked standing to enforce the Mortgage (Count III), "concerted action" civil conspiracy against all Defendants (Count V) and unjust enrichment against all Defendants (Count VI).[2]

---

[1] Only Defendants U.S. Bank and SPS have appeared in this action which was removed to this Court on April 26, 2012 pursuant to 28 U.S.C. § 1441(a). D. 1 ¶ 2. "When a civil action is removed solely under section 1441(a), all defendants who have been properly joined and served must join in or consent to the removal of the action." 28 U.S.C. § 1446(b)(2)(A). A lack of unanimity in removal "is not considered to be a jurisdictional defect, and unless a party moves to remand based on this defect, the defect is waived and the action may proceed in federal court." Esposito v. Home Depot U.S.A., Inc., 590 F.3d 72, 75 (1st Cir. 2009).

[2] The Court initially dismissed the unjust enrichment claim as to U.S. Bank, D. 26 at 15, but partially granted Koufos's motion to alter the judgment and reinstated the claim, D. 42 at 5-6.

On July 16, 2013, U.S. Bank and SPS filed an amended answer and counterclaim seeking title and possession of the Property on behalf of the Trust. D. 43. The parties proceeded with discovery on the remaining claims. Plaintiff Peter Koufos died during the pendency of this lawsuit, D. 50, and James Koufos, the administrator of Peter Koufos's estate, was substituted as plaintiff, D. 53. U.S. Bank and SPS subsequently moved for summary judgment on Koufos's remaining claims and their counterclaim. D. 58. The Court heard the parties on the pending motions and took this matter under advisement. D. 67.

**V.     Discussion**

    **A.     The Trust Owned the Mortgage and Held the Power of Sale**

Count III seeks a declaratory judgment that U.S. Bank as Trustee of the Trust lacked standing to enforce the Mortgage. D. 10 ¶¶ 244-258. U.S. Bank claimed the authority to foreclose as the assignee of the original mortgagee, New Century, to whom Koufos granted the power of sale. D. 59 at 4. U.S. Bank argues that "the Note was sold, transferred, conveyed, and assigned to the Trust effective July 1, 2005." Id. U.S. Bank acknowledges that New Century remained the record title holder of the Mortgage until the Assignment in 2009 but argues that New Century held the Mortgage in equitable trust for the benefit of the Trust as the holder of the Note. Id. The Trust received record title of the Mortgage from New Century pursuant to the Assignment, and according to U.S. Bank, this transfer was "fully-consistent with the implied trust" whereby the Trust had the right as of July 1, 2005 to compel New Century to deliver title to the Mortgage to the Trust as security for the Note. D. 59 at 5.

Koufos argues that there are factual disputes as to whether the 2005 PSA transferred the Note to the Trust. In January 2005, Koufos executed the Note and granted the Mortgage to New Century. D. 62-3, D. 62-4. On July 1, 2005, Credit Suisse, DLJ Mortgage, SPS and U.S. Bank

5

entered into the PSA.  D. 62-5–62-10.  The PSA was structured with Credit Suisse as the depositor, DLJ Mortgage as the seller, SPS as the servicer and U.S. Bank as the Trustee.  D. 62-5 at 2.  Koufos argues that there is no evidence that Credit Suisse, the purported depositor, actually owned the Koufos mortgage assets that it purported to deposit into the Trust at the time the PSA was executed.  According to Koufos, this gap in the chain of assignments between New Century and the Trust is fatal to U.S. Bank's assertion that the Trust was the undisputed owner of the Note (and therefore the equitable owner of the Mortgage) as of July 1, 2005.

The Court concludes that Koufos has not introduced evidence sufficient to raise a genuine dispute of fact as to the Trust's ownership of the Note and its right to foreclose upon the Mortgage.  The record includes an executed copy of the PSA that shows that the Note, identified by its SPS number, was included among the assets transferred to the Trust in 2005.  D. 62-11 at 3; D. 62 at ¶ 11.  U.S. Bank has also introduced a copy of the Note with an allonge endorsed to the Trust.  D. 62-3 at 8.  A sworn affidavit from Diane Weinberger, the director of SPS, states that the Note was transferred to the Trust in 2005 and the Trust at that time became the equitable holder of the Mortgage while New Century remained the record holder.  D. 62 ¶ 12.  In 2009, consistent with its equitable ownership of the Mortgage, the Trust recorded an Assignment transferring record ownership of the Mortgage from New Century to the Trust.  D. 62-12.  Koufos argues that this evidence is insufficient but has presented no specific admissible evidence to challenge the accuracy of this account or to suggest that another party owns the Mortgage or Note.

The Supreme Judicial Court considered a similar question (also involving U.S. Bank in its role as Trustee) in <u>U.S. Bank National Association v. Ibanez</u>, 458 Mass. 637 (2011), and affirmed the denial of purported assignees' actions for declarations that they held clear title to

properties they had foreclosed upon and subsequently purchased at foreclosure sales. U.S. Bank claimed in that case that it held a mortgage under a trust agreement, but the trust agreement was not submitted to court. The court noted that "even if there were an executed trust agreement with the required schedule, U.S. Bank failed to furnish any evidence that the entity assigning the mortgage . . . ever held the mortgage to be assigned. Id. at 650. Acknowledging that the mortgages on record did not show a transfer to the purported assignor, the court held that U.S. Bank had not established that it was the mortgage holder at the time of the foreclosure. The Ibanez court further noted:

> We do not suggest that an assignment must be in recordable form at the time of the notice of sale or the subsequent foreclosure sale, although recording is likely the better practice. Where a pool of mortgages is assigned to a securitized trust, the executed agreement that assigns the pool of mortgages, with a schedule of the pooled mortgage loans that clearly and specifically identifies the mortgage at issue as among those assigned, may suffice to establish the trustee as the mortgage holder. However, there must be proof that the assignment was made by a party that itself held the mortgage. See In re Samuels, 415 B.R. 8, 20 (Bankr. D. Mass. 2009). A foreclosing entity may provide a complete chain of assignments linking it to the record holder of the mortgage, or a single assignment from the record holder of the mortgage. See In re Parrish, 326 B.R. 708, 720 (Bankr. N.D. Ohio 2005) ("If the claimant acquired the note and mortgage from the original lender or from another party who acquired it from the original lender, the claimant can meet its burden through evidence that traces the loan from the original lender to the claimant").

Id. at 651. The court continued: "[t]he key in either case is that the foreclosing entity must hold the mortgage at the time of the notice and sale in order accurately to identify itself as the present holder in the notice and in order to have the authority to foreclose under the power of sale. . . ." Id. Consistent with Ibanez, U.S. Bank has submitted not only the PSA identifying the transfer of the Note into the pool of assets consolidated in the Trust in 2005, but also the Assignment from 2009: "a single assignment from the record holder of the mortgage," id., transferring the Mortgage from New Century to the Trust.

7

Koufos argues that there is a factual dispute as to the validity of the Assignment of the Mortgage in 2009 to the Trust because New Century had filed for Chapter 11 bankruptcy in 2007 and its mortgage assets were sold in bankruptcy proceedings. But see Juárez v. Select Portfolio Servicing, Inc., 708 F.3d 269, 282 (1st Cir. 2013) (noting that the court need not address plaintiff's argument that New Century's bankruptcy invalidated a subsequent assignment of her mortgage because "bankruptcy law allows a debtor in possession to continue operating in the normal course of business and she has not set forth any evidence that this Chapter 11 bankruptcy in particular was somehow different"). Under Massachusetts law, "the mortgage and the note are separate instruments; when held by separate parties, the mortgagee holds a bare legal interest and the noteholder enjoys the beneficial interest." Culhane v. Aurora Loan Servs. of Nebraska, 708 F.3d 282, 293 (1st Cir. 2013). The Trust, as the holder of the Note, possessed the "equitable right to demand and obtain an assignment of the mortgage" from the record holder, as it did in 2009. Id. at 292. A court recently considered a similar challenge regarding the status of a mortgage held by New Century after its bankruptcy where the corresponding note had previously been transferred. Barrasso v. New Century Mortg. Corp., Civ. No. 12 MISC 461715 HPS, 2015 WL 1880559, at *1 (Mass. Land Ct. Apr. 14, 2015). The court held that "[n]ot even the dissolution of New Century in bankruptcy — or a ruling from this court that one of the challenged assignments was wholly void — could prevent an assignment of the . . . mortgage to the entity that currently has the right to enforce the note secured by the mortgage." Id. at *7.

Furthermore, Koufos has introduced no evidence that the Mortgage was listed among the mortgage assets sold in 2007 by New Century in its bankruptcy proceedings. As in Barrasso, the "only reasonable inference is that the . . . mortgage loan had already been transferred into the securitization trust at the time the [New Century] bankruptcy plan was approved." Id. at *6.

8

Accordingly, the Court concludes that U.S. Bank is entitled to summary judgment on Koufos's declaratory judgment claim as to the ownership of his mortgage (Count III).

### B.     Koufos's Civil Conspiracy Claim Is Unsupported by the Record

The remaining part of Koufos's conspiracy claim alleges a "concerted action" civil conspiracy. D. 10 ¶¶ 277-282. This variant of civil conspiracy requires "first, a common design or an agreement, although not necessarily express, between two or more persons to do a wrongful act and, second, proof of some tortious act in furtherance of the agreement." Aetna Cas. Sur. Co. v. P & B Autobody, 43 F.3d 1546, 1564 (1st Cir. 1994). Koufos alleges that Defendants acted in concert to seek wrongful collection and foreclosure on the Mortgage, which allegedly was not owned by Defendants.

As discussed above, the Court finds that the Trust owned the Note and the right to foreclose on the Mortgage at the time of foreclosure, so there is no remaining viable theory of concerted action on the part of Defendants to wrongfully collect or foreclose upon the Mortgage. Accordingly, the Court grants summary judgment to Defendants on the remaining civil conspiracy claim (Count V).

### C.     Koufos's Unjust Enrichment Claim Also Fails

Count VI alleges that "making, servicing, and litigating the foreclosure" of the Mortgage have unjustly enriched all Defendants. D. 10 ¶¶ 283-85. "A claim for unjust enrichment is grounded in the principle that a person who has been unjustly enriched at the expense of another is required to make restitution to the other." In re Marron, 499 B.R. 1, 6 (D. Mass. 2013) (internal quotations omitted). A claim for unjust enrichment requires three elements: "(1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) acceptance or retention by the defendant of the benefit under the

9

circumstances would be inequitable without payment for its value." Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 552 F.3d 47, 57 (1st Cir. 2009) (internal citation omitted).

As discussed above, the summary judgment record establishes that the Trust had the right to foreclose on the Mortgage. On this record, Koufos cannot prevail on his unjust enrichment claim, where he has presented no evidence that the acceptance of loan payments or foreclosure proceeds by Defendants was wrongful. The Court grants summary judgment to Defendants on Koufos's unjust enrichment claim (Count VI).

### D. The Trust Is Entitled to Title and Possession of the Property

Finally, U.S. Bank and SPS also move for summary judgment on their counterclaim seeking title and possession of the Property on behalf of the Trust. In a post-foreclosure proceeding, a party makes a prima facie showing of its right to possession by producing an attested copy of the recorded foreclosure deed and affidavit of sale under Mass. Gen. L. c. 244 § 15. See Fed. Nat. Mortg. Ass'n v. Hendricks, 463 Mass. 635, 637 (2012). U.S. Bank and SPS have met this requirement by producing certified copies of the foreclosure deed and affidavit. D. 62-19.

Koufos argues that Defendants must bring a separate action for summary process under Mass. Gen. L. c. 239 before they can be granted possession because this statute is "the solitary statutorily authorized procedure to recover possession of real property after a legally held foreclosure auction sale." D. 63 at 19. Koufos's sole legal citation for this position, however, weighs against his argument. In Serra v. Quantum Servicing Corp., 747 F.3d 37 (1st Cir. 2014), the First Circuit considered whether summary process was the sole means of obtaining possession after foreclosure in Massachusetts, even though the argument had not been raised before the district court. The First Circuit concluded:

> Even were this argument not waived, it is clear that "summary process" is not the exclusive means by which a foreclosing entity make seek possession of real property in Massachusetts. <u>See</u> Mass. Gen. Laws ch. 184 § 18 ("No person shall attempt to recover possession of land . . . other than through an action brought pursuant to chapter two hundred and thirty-nine <u>or such other proceedings authorized by law</u>." (emphasis added)).  Having failed to articulate any clear theory as to why a properly filed counterclaim before the district court would not constitute such an alternative means to establish possession, Serra's claim must fail.

<u>Id.</u> at 43.  The statutory language makes clear that summary process is not the only way to recover possession after foreclosure, so Koufos's sole theory as to why a separate summary process action is needed here fails.  The Trust is entitled to title and possession of the Property.

## VI.   Conclusion

For the foregoing reasons, the Court **ALLOWS** U.S. Bank and SPS's motion for summary judgment on Koufos's remaining claims and their counterclaim for title and possession, D. 58.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge